**Antonia Vanderlaan, Plaintiff-Appellant, v.
Roger Vanderlaan, Defendant-Appellee.**

**Gen. No. 53,786.**

First District, Fourth Division.

June 24, 1970.

Rehearing denied and opinion modified July 28, 1970.

410

Gomberg, Missner and Schaps, of Chicago, for appellant.

Paul M. Lurie (Fohrman, Lurie, Holstein, Sklar and Cottle, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Plaintiff appeals from a judgment denying her petition to modify a decree which had awarded custody of her two youngest children to defendant.

The parties were married on October 13, 1954, and on September 9, 1959, plaintiff was granted a divorce. One child, Debra, was born prior to the divorce and custody was awarded to plaintiff. Defendant was ordered to pay $30 per week for Debra's support. On December 21, 1962, the original divorce decree was amended by a finding that plaintiff and defendant had resumed "marital relations"[1] after the divorce decree of September 9, 1959; that another child, Jeffery, was born February 26, 1961, fifteen months after the entry of the original divorce decree; that plaintiff was pregnant with child by defendant; and that defendant admitted the paternity of Jeffery and the child in esse. The court found that defendant was their father and ordered him to pay plaintiff $35 per week for their support. Plaintiff and defendant separated some time in 1962.

Another amended order was subsequently entered on February 27, 1963, indicating that the third child, Randy, was born January 2, 1963, and that defendant was his father.

During 1963 and 1964 defendant was in arrears in his support payments and on October 1, 1965, there was an order settling defendant's child support arrearage at

---

[1] The parties did not remarry.

411

$350 and giving defendant visitation rights with the children.

On August 30, 1966, the court, upon defendant's petition, ordered that the custody of Debra, Jeffery and Randy Vanderlaan be awarded to defendant until further order of court; that defendant's support payments be abated; and that plaintiff be given the children for six weeks in the summer and other reasonable visitation rights.

Subsequently, on July 28, 1967, plaintiff filed a petition seeking a modification of the August 30, 1966, order. Plaintiff prayed that the custody of the three children be awarded to her.

On September 21, 1967, the court was informed by the oldest child, Debra, that she desired to return to live with her mother (plaintiff). The parties agreed and pending a hearing on plaintiff's petition of July 28, the court awarded custody of Debra to plaintiff; Jeffery and Randy to continue in the custody of defendant, and each party to have reasonable visitation rights.

On October 15, 1968, the court held a hearing on plaintiff's petition to modify the August 30, 1966, order. The court found that plaintiff voluntarily sent defendant a letter dated July 25, 1966, in which she stated that the children would be happy in a small town away from the dangers of a large city and that with defendant they would have a family life since she had to work and could not spend very much time with the children. The court also found that after having sent the letter, plaintiff voluntarily gave custody of the children to defendant;[2] that plaintiff had full knowledge of her acts even though she did not have the

---

[2] At the hearing plaintiff testified she told defendant in 1966 that her request that he take custody of the children was only temporary and that she has remarried and her present husband has sufficient funds to support the children without any further support payment from the defendant.

advice of counsel; that plaintiff voluntarily agreed to the August 30, 1966, order; that plaintiff and defendant both agreed the other was a fit and proper person to have custody of the minor children; that after August 30, 1966, plaintiff and defendant agreed to allow Debra to return to live with plaintiff; that there had been no change in circumstances affecting the children; and that it was in the best interest of Jeffery and Randy to remain with defendant. Therefore, the court denied plaintiff's petition to modify the August 30, 1966, order except that Debra was to remain with plaintiff, and Jeffery and Randy with defendant. Each party was granted mutual visitation rights. It is from this order which plaintiff appeals.

Plaintiff contends that defendant, as the putative father of Jeffery and Randy, had no right to the custody of these children born out of wedlock. Plaintiff cites Ill Rev Stats 1967, c 106¾, § 62, in support of her contention. Section 62 provides:

> A person charged or alleged to be the father of a child born out of wedlock, whether or not adjudicated the father under this Act, shall have no right to the custody or control of the child except such custody as may be granted pursuant to an adoption proceeding initiated by him for that purpose.

In DePhillips v. DePhillips, 35 Ill2d 154, 219 NE2d 465, plaintiff, the father of a twelve-year-old child born out of wedlock, brought suit against the mother and her purported husband to obtain custody of the child, or in the alternative, visitation rights. Defendant's motion to dismiss the complaint was denied. After a hearing the trial court entered an order that plaintiff contribute to the support of the child and have rights of visitation. The appellate court reversed and remanded with directions to vacate the decree on the ground that

the trial court lacked jurisdiction due to the illegal behavior of the parties. The Supreme Court granted plaintiff leave to appeal. In its opinion the court at page 156 states:

> We are not faced in this case with the difficult public policy determination which has troubled courts in other jurisdictions. In Illinois, this determination has been made by our legislature, and is embodied in section 13 of the Bastardy Act of 1872, as amended. At the time of Donna's birth in 1951, that section provided that "The reputed father of a bastard child shall have no right to the custody or control of such child." (Ill Rev Stats 1951, c 17, par 13.) As we have previously held, the act in effect at the time of the birth of an illegitimate child must be looked to in determining the rights and liabilities of the father of such child. Di Bella v. Cuccio, 15 Ill2d 580.
>
> Plaintiff suggests that this section prohibits only custody or control but does not expressly proscribe the granting of visitation rights to a parent. Although an argument may be made that a grant of visitation right does not necessarily grant legal custody . . . section 13 of the Bastardy Act, as amended, prohibits not only the granting of custody but also the granting of "control" to a putative father . . . . In our opinion, a grant of visitation rights of necessity involves a grant of "control" over a minor child. Section 13 clearly embodies a legislative determination that a putative father should have no right to the society of his illegitimate child. (Wallace v. Wallace, 60 Ill App2d 300.) A contrary construction of the statute cannot be justified.
>
> Plaintiff's complaint in this case prayed that he be granted custody or visitation rights as to Donna.

414

By statute, he was not permitted to have either. Consequently, the complaint should have been dismissed for want of equity in the trial court on defendants' motion.

■ In the instant case, the trial court's orders of August 30, 1966, and October 15, 1968, granting the custody of Jeffery and Randy to defendant were in direct contradiction to the public policy stated in section 62 of the Paternity Act. (Ill Rev Stats 1967, c 106¾, § 62.) We must abide by the "legislative determination that a putative father should have no right to the society" of his children born out of wedlock. (DePhillips v. DePhillips, supra.) Therefore, defendant as the putative father could not be granted custody of the children. (See In re Stanley, 45 Ill2d 132, 256 NE2d 814.)

Defendant argues that plaintiff cannot raise on appeal points neither pleaded nor raised below and that this court cannot consider statutes not relied on in the trial court, specifically section 62 of the Paternity Act. However, in Hux v. Raben, 38 Ill2d 223, 224, 230 NE2d 831, the court states:

Rule 366 [Supreme Court Rules] provides: "(a) Powers. In all appeals the reviewing court may, in its discretion, and on such terms as it deems just . . . (5) give any judgment and make any order that ought to have been given or made, . . . ." (36 Ill2d 159.) A similar thought is expressed in the provision of Rule 615 with respect to the review of criminal cases: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 36 Ill2d 182.

"These provisions recognize that the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of

415

precedent may sometimes override the considerations of waiver that stem from the adversary character of our system. (See, Friendly, Review of Llewellyn, The Common Law Tradition, 109 U of Pa L Review 1040; Vestal, Sua Sponte Consideration in Appellate Review, 27 Fordham LR 477; 64 Harv LR 652.) There are limitations. '[A]n appellate court should not, and will not, consider different theories or new questions, if proof might have been offered to refute or overcome them had they been presented at the trial.' (Rentways, Inc. v. O'Neill Milk and Cream Co., (1955) 308 NY 342, 126 NE2d 271.) In exercising the power care should be taken that the litigants are not deprived of an opportunity to present argument."

■ In the instant case the appellant in her brief urged the applicability of the Paternity Act and appellee had the opportunity to argue this issue. There is no problem of proof. A court decree had found defendant to be the putative father of Jeffery and Randy and no proof could have been offered by defendant to refute or overcome plaintiff's appellate theory. Therefore, "for a just result and for the maintenance of a sound and uniform body of precedent" we must apply Section 62 of the Paternity Act and reverse the judgment awarding the custody of Jeffery and Randy to defendant.

Since we have determined to reverse the judgment on the ground of a public policy determination which was not argued in the trial court, we will not review the trial court's reasons for awarding custody of the children to the defendant. However, we wish to point out the following facts. Plaintiff was originally awarded custody of Debra and later, of Jeffery and Randy; defendant was in arrears in support payments during 1963, 1964 and 1965; plaintiff in 1966 advised defendant that she had to work to help support the children because his

payment of $30 per week for the children's support was inadequate; that she was tired and run down; and that she had little time to spend with the children due to her employment. At the hearing plaintiff testified that she told defendant in 1966 that her request that he take custody of the children was only temporary; and that she has remarried and her present husband has sufficient funds to support the children without any further support from the defendant. We also note that the custody of Debra was changed by agreement of the parties after the order of August 30, 1966, and that the children were thereby separated from each other. In the court's last order both plaintiff and defendant were found to be fit and proper persons to have custody of the children.

The judgment is reversed and the cause remanded with directions to enter an order granting the custody of all three children to plaintiff.

Reversed and remanded with directions.

STAMOS, P. J. and ENGLISH, J., concur.