ANGELO FORESTIERE *v.* BERTA DOYLE

SUPERIOR COURT      HARTFORD COUNTY      FILE NO. 179138

Memorandum filed April 2, 1973

*Schweitzer & Mayor,* of Hartford, for the plaintiff.

*Day, Berry & Howard,* of Hartford, and *Groobert & Mahon,* of Manchester, for the defendant.

PARSKEY, J.   The plaintiff, the acknowledged father of the defendant's child, has sought a writ of habeas corpus to secure visitation rights with respect to his child.   The defendant questions the plaintiff's standing to maintain the present petition.

Angelo Forestiere, Jr., was born to the defendant at Hartford on January 21, 1969. After Angelo's birth, the defendant lived with him in East Hartford, first for a short period of time in a three-room apartment at Governor Street and later at a better three-room apartment at Church Street.   In October, 1970, the defendant moved to her present address in Manchester where she has been living ever since.   The plaintiff asserts that he lived with

the defendant both at Church Street and at her present home in Manchester until he moved out at her request. The defendant disputes most of the plaintiff's assertions but she does admit that he visited her at Governor and Church Streets about three times a week and that he lived with her in Manchester between November, 1970, and February, 1971, when she requested that he move out. She also allows that he gave her about $15 a week for support from 1969 to sometime in 1971. On November 19, 1970, the plaintiff signed a written acknowledgement of paternity at the Circuit Court in Manchester. On June 2, 1971, he signed an agreement to contribute $10 per week for Angelo's support, which agreement was approved by the Circuit Court. He has been complying with this order regularly. During the time that he claims he cohabited with the defendant, he also maintained an apartment at Woodland Street in Hartford, a room at Canterbury Street in East Hartford, and living quarters at Hillside Avenue in Hartford, and gave these addresses from time to time on such documents as his operator's license, motor vehicle registration, and acknowledgement of paternity. The parties and their respective witnesses sharply disagree as to whether the plaintiff cohabited with the defendant during all the times he so claims, his witnesses testifying that they saw evidence of such cohabitation and the defendant's witnesses testifying that during most of the disputed periods they saw no evidence that a man was cohabiting with the defendant at the various addresses.

The defendant makes two major attacks against the petition. First, she says that the petition should be rejected because the plaintiff does not come into court with clean hands. The basis for this attack is her contention that the plaintiff falsely stated on his operator's license and his motor vehicle registra-

tion addresses different from those at which he now claims he was living. Even were the defendant's assertion to be accepted at face value, the plaintiff's judicial position would remain unchanged. The clean hands doctrine comes down to this: Where a claim is tainted by fraud of the claimant, equity will deny relief, but only where the claim grows out of, depends upon or is inseparably connected with the prior fraud. *Gest* v. *Gest,* 117 Conn. 289, 296. Thus the rule applies only to the particular transaction under consideration and not to the claimant's conduct in other matters. *Samasko* v. *Davis,* 135 Conn. 377, 383. The plaintiff's conduct, even with the defendant's gloss, does not call for invocation of the clean hands doctrine in this case.

The defendant's second attack is on the plaintiff's standing as the natural father of the defendant's child to seek any relief from the court. The defendant contends that in habeas corpus proceedings involving questions of custody and visitation rights the petitioner must have a special interest, that the essential elements of such interest are parenthood, cohabitation and support, and that the plaintiff's sometimes cohabitation and haphazard support except under court order leave him with parenthood alone and it is an insufficient interest to give him standing. He argues that parenthood is a sufficient interest by itself but that if more is required he still qualifies.

The constitutional right of the natural father to a hearing on questions involving the custody of his illegitimate child has been discussed recently in *Stanley* v. *Illinois,* 405 U.S. 645 (custody), and *Doe* v. *Doe,* 163 Conn. 340 (custody and visitation). *Stanley* stands for the proposition that, as a matter of due process, a father who has sired and raised an illegitimate child is entitled to a hearing on his fitness as a parent before his child can be taken

from him and that, by denying him a hearing while extending it to all other parents whose custody of their children is challenged, a state denies the natural parent the equal protection of the law guaranteed by the fourteenth amendment. Although Chief Justice Burger dissented, he seemed to suggest that a natural father may have standing where his biological status has been adjudicated in a paternity proceeding in which he has been made liable for the child's support. Id., 664. *Doe* stands for the proposition that a petition which alleges that the petitioner is the natural father of a child, that he and the natural mother have lived together for more than ten years, that during that period of time the mother held him out to the community as her husband and the father of her child, that at all times he has supported the child, and that the mother has accepted the support is sufficient against a motion to quash. In *Doe,* our Supreme Court, in referring (p. 344) to the phrase "sired and raised" as used in *Stanley,* made it a point to italicize both key words. Since *Doe* involved both custody and visitation, it is unclear whether both factors must be present when the only issue is visitation, as in the present case, or whether something less, such as continuing support, would be sufficient.

With respect to the factual considerations in the present case, it is worth noting at the outset that the "natural father, as well as the natural mother, remains a parent no matter how estranged parent and child may become. A stranger may by conduct become a foster parent, but no conduct can transmute a natural parent into a stranger." *Baumet* v. *United States,* 344 U.S. 82, 85 (opinion dissenting in part). In the present case the plaintiff has acknowledged his paternity and has continued to support his child under an order of the Circuit Court. These facts, by themselves, would seem to give him stand-

ing under both the majority and minority opinions in *Stanley* v. *Illinois,* supra, and under *Doe* v. *Doe,* supra, especially where the limited issue is visitation rights. Furthermore, when one adds to these facts the plaintiff's concededly regular and frequent visits and his sometime cohabitation with the defendant, a case has been made for permitting him to get his foot in the courtroom doorway. Under these circumstances, to deny him visitation rights without a hearing on the ultimate question of what is best for the welfare of the child is to deny him his constitutional rights.

Accordingly, an order may enter finding that the plaintiff has standing to be heard on the merits in the present proceeding.