**In the Interest of K, a baby girl.**

No. B–5242.

Supreme Court of Texas.

March 31, 1976.
Rehearing Denied April 28, 1976.

Donald A. Smyth, Brazoria, Sally Ray, Huntsville, for petitioner.

Franklin L. Smith, County Atty., T. R. Bandy, Jr., Asst. County Atty., Corpus Christi, for respondent.

REAVLEY, Justice.

In April of 1974 an unwed mother gave birth to a baby girl, whom we shall call K. The young mother was unable to care for the child, and she relinquished her parental rights to the Nueces County Child Welfare Unit of the Department of Public Welfare. The Child Welfare Unit took responsibility as soon as the baby was released from the hospital, providing her with foster care and locating suitable adoptive parents. The instant legal proceeding was initiated to terminate the parent-child relationship, to afford the father of the child an opportunity to be heard if he wished, and for the designation of the Child Welfare Unit as managing conservator of the child as a predicate for ultimate adoption.

S.D.A. is the child's father—only in the sense of that relationship which is the biological consequence of erotic ecstasy on a summer night. After learning of the moth-

er's pregnancy, he showed no disposition to assist with her problem or expense, and within a month he was arrested for interstate transportation of a stolen vehicle and of a 14 year old girl. He has been confined in jail or penitentiary since October of 1973. After he was served with citation and the petition of the Child Welfare Unit, he filed his own petition for the voluntary legitimation of the baby girl and for the appointment of himself as her managing conservator. The trial court held a hearing on these two petitions. S.D.A. was present and testified. The State provided him with diligent counsel. Baby girl K was represented by her duly appointed guardian ad litem. The trial court found the father not to be a fit person to act as parent of the child and that the best interests of the child required the denial of his petition. Accordingly, the court granted the petition of the Child Welfare Unit and denied the petition of S.D.A. The Court of Civil Appeals affirmed. 520 S.W.2d 424. S.D.A. persists.

Our question is whether the rights of this biological father have been abused. He contends that he is entitled to the legitimation of the child and to full parental rights by virtue of the fact that he is the biological father. He further contends that those parental rights cannot be terminated except by proceeding under Sec. 15.02 of the Family Code and by proof that he has been guilty of some specific act or omission enumerated in Sec. 15.02(1). He finally argues that his contentions must be upheld by the Texas law if that law is to pass minimum requirements of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, which he says entitles him to be treated in precisely the same manner as if he had been married to the mother of K at the time of the child's birth.

We first look to the statute in effect at the time of the hearing in 1974 to see if the trial court complied with the enactment of the Legislature. Title 2 of the Family Code at that time was in the form enacted in 1973 and effective on January 1, 1974. Acts of the 63rd Legislature, Regular Session, 1973, Ch. 543. Reference will be made below to the change in Title 2 which was made in 1975 after the hearing in this case.

Under the Family Code a "parent" is not necessarily an immediate progenitor of the child; the term applies only to those named in Sec. 11.01 of the Code who are entitled to a legal relationship with all of the rights, privileges, duties and powers over the child enumerated in Sec. 12.04. Absent a married relationship between the father and mother of the child, the father is not a "parent" unless by force of Secs. 12.02 and 13.01. A person may have formerly been a legal "parent," but if that relationship with the child is terminated under Chapter 15 of Title 2, the person is no longer a "parent" under the Code.

The alleged father of an illegitimate child is entitled by Sec. 11.09 to service of citation upon the commencement of any suit affecting the parent-child relationship between the child and the mother or any other person. The father then may seek voluntary legitimation under Sec. 13.01. S.D.A. has done so under 13.01(b) which provides as follows:

> If a statement of paternity is filed with the State Department of Public Welfare, the father, the mother, or the department may institute a suit for a decree establishing the child as the legitimate child of the person executing the statement. On the consent of the mother, the managing conservator, or the court, and on the filing of the statement of paternity with the petition, the court shall enter a decree declaring the child to be the legitimate child of the person executing the statement of paternity.

Neither the mother of the baby girl K, nor the Child Welfare Unit as managing conservator, nor the trial court has consented that S.D.A. may obtain a decree establishing this child as the legitimate child of S.D.A. Such a decree would entitle S.D.A. to the legal relationship as a parent under the Code. S.D.A. argues that the only matter to be considered in the legitimation proceeding is the paternity of the child and that, since it is conceded that S.D.A. is in fact the father

of this baby girl, the court has no discretion to deny him the decree of legitimation. We disagree. We fail to see why the Legislature would require the "consent" of the court if the biological fact is the only predicate for legitimation and, hence, entitlement to full parental rights. If the court must consent to the matter, discretion is thereby conferred upon the judge to see that the one who would assume parental rights and responsibilities is fit to do so and that a decree declaring this relationship is made only if it is in the best interest of the child.[1]

S.D.A. then points to Sec. 15.02 of the Code which provides that the court may terminate the parent-child relationship if a parent has consented or has been guilty of any of the grounds of abandonment, neglect or abuse there specified and if, in addition, the termination is in the best interest of the child. S.D.A. says that the United States Constitution assures that he must be treated in precisely the same manner. Thus, once he is shown to be the biological father of the child, his rights with respect to the child may not be terminated absent a showing of the same grounds required to terminate the rights of a father to whom a child is legitimately born.

■ It is clear that the law as S.D.A. says it ought to be is not the law of the Texas Family Code. Sec. 15.02 expressly applies to parents and not to all fathers. Sec. 15.02(1) was drafted in 1973 without thought of a biological father who terminated his relationship with the mother and the expected offspring nine months prior to the birth of the child. It may be questioned whether the trial court was restricted to these specific grounds of 15.02(1) if the father (even if a "parent") were totally unfit to hold any responsibility or control of the child—even though it might not be said that he has yet engaged in conduct which has endangered the child. In any event, under the circumstances of this case the

Legislature provided for the exercise of discretion by the trial court prior to the legitimation of the child as to the biological father, which discretion was to be exercised according to the best interests of the child. Since S.D.A. was not entitled to the decree of legitimation, the court was not required to look to the specific grounds of Sec. 15.02 which are relevant only for termination of the relationship between the child and one who has been given the legal status of a parent.

We come now to the constitutional question. S.D.A. contends that the United States Supreme Court has in *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) equated fathers of illegitimate children with fathers of legitimate children and has required the states to do likewise. In that case the State of Illinois had removed three children from the father's custody following the death of the children's mother. The father had over prior years taken part in the care and custody of his children and was then living together with them as a family unit. Illinois denied the father an opportunity to appear in court to show why his family should not be dismembered, and he was denied a hearing on his fitness to keep his children. Despite the existing family relationship, because of the lack of a legal marriage to the deceased mother of the children, the State presumed the father to be unfit as a parent. The Supreme Court held:

> We conclude that, as a matter of due process of law, Stanley was entitled to a hearing on his fitness as a parent before his children were taken from him and that, by denying him a hearing and extending it to all other parents whose custody of their children is challenged, the State denied Stanley the equal protection of the laws guaranteed by the Fourteenth Amendment. 405 U.S. 649, 92 S.Ct. 1211.

Counsel for S.D.A. reads *Stanley* to preclude any and all distinctions between fa-

---

1. When Chapter 13 was amended by the Legislature in 1975 the Legislature specifically provided that the court may consent to a legitimation "[I]f the entry of the decree is in the best interest of the child . . . ." Sec. 13.21(c). Acts of the 64th Legislature, Regular Session, 1975, Ch. 476.

thers of illegitimate children and other parents. We do not read the Supreme Court to have made such a holding, nor do we think that the Supreme Court has lost sight of the paramount rights of the child. The *Stanley* opinion emphasizes the importance of the family and the integrity of the family unit. The Court objects to the *separation* of children from a father who has sired and *raised* them until the father has been given an opportunity to show his fitness to keep that family with him.

■■■■ *Stanley* does not decree that all unwed fathers have fundamental rights to full parental status or that every statutory discrimination against the unwed father is suspect. The overriding interest of state and courts is the welfare of the affected children. We are not nearly so far down the road to unrestrained egalitarianism as to hold that the Constitution guarantees an unwed father parental rights in violation of the best interests of the child.

The Court of Appeals of New York has upheld a New York statute which requires consent of the natural mother, without requiring consent of the natural father, for adoption of an illegitimate child. *In re Adoption of Malpica-Orsini*, 36 N.Y.2d 568, 370 N.Y.S.2d 511, 331 N.E.2d 486 (1975). That court wrote:

> Of course, the primary concern of the Legislature and the courts is with the welfare of the children involved rather than with the allocation of rights between the mother and the usually uncertain and reluctant father of the children born out of wedlock. In this context, legislation and policy are governed by general conditions rather than the special circumstances of a sympathetic and idiosyncratic situation. Moreover, as noted earlier, the father in this case was given notice and an opportunity to be heard on the issue of what was in the best interest of the child. 36 N.Y.2d 579, 370 N.Y.S.2d 521, 331 N.E.2d 493.

There is a rational basis for the state, which has an interest in securing stable homes and supportive families for children, to distinguish between the father who has accepted the legal and moral commitment to the family and the father who has not done so. The biological father may be a sperm donor or a rapist or someone as S.D.A. who has simply engaged in a single hit and run sexual adventure. He may, on the other hand,. be devoted to child and family even though the legal contract has not been sealed. Texas law offers the biological father of an illegitimate child the opportunity to prove which category in which he falls and to show that he should not be treated differently from fathers legally committed to the mothers of their children. Thus S.D.A. sought and received a fair hearing. The evidence proved him to be an unfit person to act as parent of this child, and the denial of his petition for parental status was shown to be in the best interest of the child. His rights have been respected. The rights of society and baby girl K permit him nothing more.

The judgments below are affirmed.

POPE, Justice (dissenting).

I respectfully dissent. The majority opinion unnecessarily construes the Family Code in such a way as to deal unequally between men and women and between an unwed mother and an unwed father. Among those differences are:

(1) An unwed woman is treated in law as a parent by force of her biological motherhood, whereas the undisputed fact of fatherhood does not constitute the unwed man a parent.

(2) The unwed father bears the burden of the duties which flow from parenthood upon proof of his biological fatherhood, *Gomez v. Perez*, 466 S.W.2d 41 (Tex.Civ.App. 1971, writ ref'd n. r. e.), *rev'd*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), but the same unwed father has no parental rights by force of his fatherhood.

(3) An unwed man's parental rights may be permanently terminated without compliance with article 15.02, Family Code, whereas an unwed woman's parental rights are terminable only upon proof which meets those statutory requirements.

Chapter 13 of the Texas Family Code makes provision for legitimation procedures; chapter 14 provides for conservatorship, possession and support of children; and chapter 15 provides for the permanent termination of the parent-child relationship. Each chapter imposes different tests and rules for each of those three kinds of proceedings. The majority rule, today announced, is that those statutory rules only protect the rights of women, not men.

I rather suppose that S.D.A., the father, would have had problems preserving his parental rights if he had been tried under the correct test; but we pursue a dangerous technique when this court suggests that we might be excused from following the law because, after all, one of the parties is undeserving of an equal rule.

### Legitimation Proceedings

According to article 11.01(3), the word "parent" is defined:

"Parent" means the mother, a man as to whom the child is legitimate, or an adoptive mother or father, but does not include a parent as to whom the parent-child relationship has been terminated.

It is at once apparent that the word means one thing as to the mother and an entirely different thing as to the father. Biological motherhood means parenthood in the case of the woman. The majority holds that admitted biological fatherhood does not mean parenthood in the case of the man.

The evidence without dispute conclusively established the biological fatherhood of S.D.A. S.D.A. pleaded the fact, and he filed his statement of paternity which was sufficient under section 13.02.[1] That was prima facie proof of paternity under section 13.03.[2] The Welfare Unit judicially admitted the fact of paternity by its allegation that "[t]he father of the child is S.D.A." In the course of the evidentiary hearing the Welfare Unit stipulated that "S.D.A. is the father of Baby Girl K" and the trial court found as a fact that he is the father of the child. S.D.A. conclusively established the fact of his fatherhood as a matter of law at the constitutionally mandated hearing. I would hold, therefore, that biological paternity would constitute a father a parent just as biological maternity constitutes a mother a parent. Article 11.01(3) is void in unequally defining a "parent."

S.D.A. also contended that he is a parent within a reasonable construction of section 11.01(3) of the Family Code, which in the case of a man, is one as to whom the child is legitimate or has been adopted. He reasons that he established the child's legitimacy by his compliance with section 13.01 of the Family Code. It provides:

Voluntary Legitimation

(a) The father of a child not the legitimate child of another man may institute a suit for a decree designating him as the father of the child unless the parent-child relationship has been terminated under Chapter 15 of this code. With the consent of the mother or the managing conservator, if one has been appointed, and

---

1. § 13.02. *Statement of Paternity*

The statement of paternity authorized to be used in Section 13.01 of this code must be executed by the father of the child as an affidavit and witnessed by two credible adults. The affidavit must clearly state that the father acknowledges the child as his child, that he and the mother, who is named in the affidavit, were not married to each other at the time of conception of the child or at any subsequent time, that the child is not the legitimate child of another man, and that the child is entitled to support from the father. The statement must be executed before a person authorized to administer oaths under the laws of this state.

2. § 13.03. *Effect of Statement of Paternity*

(a) A statement of paternity executed as provided in Section 13.02 of this code is prima facie evidence that the child is the child of the person executing the statement and that the person has an obligation to support the child.

(b) If the father's address is unknown or he is outside the jurisdiction of the court at the time a suit is instituted under Section 13.01 of this code, his statement of paternity, in the absence of controverting evidence, is sufficient for the court to enter a decree establishing his paternity of the child.

the court, and on the filing of a statement of paternity executed by the father and submitted with the petition, and after notice to the wife, if any, of the father of the child, the court shall enter a decree declaring the child to be the child of the father.

(b) If a statement of paternity is filed with the State Department of Public Welfare, the father, the mother, or the department may institute a suit for a decree establishing the child as the legitimate child of the person executing the statement. *On the consent of the mother, the managing conservator, or the court,* and on the filing of the statement of paternity with the petition, the court shall enter a decree declaring the child to be the legitimate child of the person executing the statement of paternity.

(c) A suit for voluntary legitimation may be joined with a suit for termination under Chapter 15 of this code. [Emphasis added.]

Section 13.01(a), quoted above, authorizes the court to "enter a decree declaring the child to be the child of the father." Section 13.01(b) authorizes the court to "enter a decree declaring the child to be the legitimate child of the person executing the statement of paternity." In my opinion the Legislature intended in a legitimation proceeding to require proof of the biological fact of paternity and, just as it is the fact of motherhood, it should be the fact of fatherhood which results in a decree of legitimation.

Section 13.01(b) requires the "consent" of the court. That consent should be given and should not be arbitrarily withheld, when all of the facts establish the fact of paternity. When the fact is disputed or ambiguous, the court should withhold its consent until the fact is settled at a trial. The withholding of consent, however, should be for the purpose of requiring proof of the fact of paternity, and not to short-circuit all of the other procedures which the Family Code authorizes.

The correct test in a legitimation proceeding is the fact, vel non, of fatherhood, and not as the majority has held, what is the best interest of the child. Chapter 14 says that the best interest of the child is the correct test for conservatorship, possession and custody and support matters. Those matters are not issues in these proceedings, but the majority has transplanted that test from chapter 14 into legitimation proceedings which involve paternity under chapter 13. Chapter 13 does not mention that test as an appropriate one. When the 63rd Legislature first enacted chapter 13 of the Family Code, it made no provision for involuntary legitimation, that is, paternity suits. It only authorized a father's voluntary suit for legitimation. The 64th Legislature amended all of chapter 13 and for the first time in Texas authorized an involuntary paternity suit so that either the mother or father could prove paternity. Sections 13.-01–13.09. Under the paternity statutes as enacted in 1975, the issue is clearly that of one's biological fatherhood. The effect of a decree that he is the father of the child "create[s] the parent-child relationship between the father and the child as if the child were born to the father and mother during marriage." Section 13.09. The construction which I would give to the earlier voluntary legitimation statute is consistent with what the Texas Legislature has now actually declared to be the correct test in the case of involuntary legitimation. Legitimation proceedings should logically concern the fact of fatherhood, whether it is a voluntary or involuntary proceeding. Until the fact of fatherhood is determined, the issues about conservatorship or permanent termination of parental rights do not arise.

By way of analogy, once the fact of fatherhood is established, an unwed father has certain parental duties fixed upon him. When *Gomez v. Perez,* 466 S.W.2d 41 (Tex. Civ.App.1971, writ ref'd n. r. e.), came to this court in 1971, we refused the writ by reason of a long line of Texas precedents which held that a father of a child born out of wedlock was under no duty to support the child. As is true in our present case, the proof established the fact of biological fatherhood. The United States Supreme

Court, even without the aid of a Texas statute, rejected our Texas rule and held that the obligation of the biological father to perform his parental duty of support applied equally to children born in and out of wedlock. *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973). Said the court, "We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother." On constitutional equal protection principles the child of an unwed father was treated like a legitimate child, and that was so without the aid of any statute. In *Gomez* the biological fact of fatherhood imposed the duty of support. If the rule is equally applied, we should also recognize the father's correlative rights of parenthood which flow from the same fact.

### Termination of the Parent-Child Relationship

Even more surprising, however, is the way the courts below and the majority of this court have arrived at a judgment which permanently terminates S.D.A.'s parental rights. Section 15.02[3] is the statute which spells out the grounds for an order permanently ending the parent-child relationship. It is in two parts. Subsection (1) requires proof of one of the specified acts numbered from (A) to (I). In addition to that required proof, subsection (2) requires proof that the termination is in the best interest of the child. The majority now holds that the statute applies to a mother but not to S.D.A., a father.

The trial court's judgment orders the permanent termination of the father's parental rights in these words: "It is therefore ordered, adjudged and decreed by the Court that all parental rights of G.K. and all rights which S.D.A. may have the right to assert in regards to said Baby Girl K, born April 6, 1974, be and are hereby terminated." The court of civil appeals and this court have affirmed the judgment of termination and have done so in spite of the Welfare Department's admission that it neither pleaded nor proved any of the facts required by article 15.02(1). The Welfare Department's brief says, "[I]t is true that none of the grounds for termination itemized in Sec. 15.02, Texas Family Code were alleged in the petition for termination and none were proved at the hearing, however, the court found from the proof adduced that Petitioner is not a fit and proper per-

**3.** § 15.02. *Termination When Parent is not Petitioner*

A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

(1) the parent has:

(A) voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return; or

(B) voluntarily left the child alone or in the possession of another not the parent without expressing an intent to return, without providing for the adequate support of the child, and remained away for a period of at least three months; or

(C) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; or

(D) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; or

(E) failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition; or

(F) abandoned the child without identifying the child or furnishing means of identification, and the child's identity cannot be ascertained by the exercise of reasonable diligence; or

(G) contumaciously refused to submit to a reasonable and lawful order of a court under Section 34.05 of this code; or

(H) been the major cause of:

(i) the child's repeated violations of the compulsory school attendance laws; or

(ii) the child's absence from his home without the consent of his parents or guardian for a substantial length of time or without the intent to return; or

(I) executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by Section 15.03 of this code; and

(2) termination is in the best interest of the child.

son to be entrusted with the care of the child and the best interest of the child requires that the court withhold its consent to legitimation . . . ."

The majority announces the rule that the Family Code is for the protection of mothers and women, but in the case of fathers and men, it is all right if the court invents a different and special rule. The reason this lack of equality is all right, says the court, is that the father in this case was given notice of the hearing, citing *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). *Stanley* has now been construed to hold that a man is equally treated if he has notice of the hearing in which the court ignores the Family Code. The rule violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Rothstein v. Lutheran Social Services of Wisconsin & Upper Michigan,* 405 U.S. 1051, 92 S.Ct. 1488, 31 L.Ed.2d 786, *rev'g mem.* 47 Wis.2d 420, 178 N.W.2d 56 (1970); *Vanderlaan v. Vanderlaan,* 405 U.S. 1051, 92 S.Ct. 1488, 31 L.Ed.2d 787, *rev'g mem.* 126 Ill. App.2d 410, 262 N.E.2d 717 (1970).

I would reverse the judgments of the courts below and remand the cause (1) for the determination of the fact of S.D.A.'s paternity; (2) for the determination of the termination issue under article 15.02; (3) and if termination should fail, then for a determination of managing conservatorship, possession, and support of the child.

STEAKLEY and DENTON, JJ., join in this dissent.