## 31643. QUILLOIN v. WALCOTT.

HILL, Justice.

The constitutional rights of the natural father of an illegitimate child are presented here for review. After the

child's stepfather filed a petition for adoption, the natural father sought to oppose the adoption, to legitimate the child and to gain visitation rights. The trial court refused to declare Code Ann. § 74-203, placing all parental power in the mother of an illegitimate, and Code Ann. § 74-403 (3), requiring only her consent for such a child's adoption, unconstitutional. The adoption was granted and the legitimation petition and visitation rights were denied. The natural father appeals.

The child, now twelve, was born in 1964. He has lived with his maternal grandmother or his mother all of his life, although he has visited with his father on occasions. The primary support for the child has been from his mother or his maternal grandparents. His father has provided some support and has given some presents from time to time.

In 1967 the stepfather and the mother were married, and on March 24, 1976, he filed his petition to adopt the child. The mother's consent to such adoption was attached to the petition. The natural father made no effort to legitimate the child or to obtain visitation rights until after the stepfather filed the adoption petition.

On appeal the natural father argues that Code Ann. §§ 74-203 and 74-403 (3) are unconstitutional.

We begin by looking at the statutory scheme of Title 74, Parent and Child, in its entirety. Sections 74-101 through 74-112 are concerned with legitimate children — what children are legitimate, how illegitimate children can be legitimated, etc. Code Ann. § 74-108, entitled "Parental Power" states how a father's parental power shall be lost: ". . . 2. Consenting to the adoption of the child by a third person. 3. Failure of the father to provide necessaries for his child. . . . 5. Consent to the marriage of the child. . ." Sections 74-201 through 74-205 deal with illegitimate children. Section 74-203, which is under attack, states the rights of the mother of an illegitimate child: "The mother of an illegitimate child shall be entitled to the possession of the child, unless the father shall legitimate him as before provided. Being the only recognized parent, she may exercise all the paternal [sic] power." Georgia law provides for two ways by which a child can be legitimated by the father: Under § 74-101 by

the marriage of the natural father and the mother and the recognition of the child as his, and under § 74-103 by a petition for legitimation.

With the classification of the children as legitimate and illegitimate in mind, we turn to §§ 74-401 through 74-424 involving adoption of children (§ 74-301 et seq. were repealed in 1973). Section 74-403 concerns the consent to adoption required of parents or guardians. Subsection (1) states that no adoption shall be permitted except with the written consent of the living parents of a child. Subsection (2) provides for an exception where the child has been abandoned or parental custody has been terminated. Subsection (3), which is under attack, provides that "If the child be illegitimate, the consent of the mother alone shall suffice."

The equal protection clause of the Fourteenth Amendment requires that all persons be treated alike under similar circumstances and conditions. It does not, however, prevent classification if the distinction is based on valid state interests. In Labine v. Vincent, 401 U. S. 532 (1971), the United States Supreme Court held that Louisiana's intestate succession laws that bar an illegitimate child from sharing equally with legitimate children are not violative of due process or equal protection. That is to say that a state may make valid classifications of children, of legitimate and illegitimate, if based upon valid state interests.

Georgia has concern for the well-being of all its children. To further the protection and care of its children, Georgia favors and encourages marriage and child rearing in a family relationship. In the case of an illegitimate child, there is no marriage and, most frequently, there is no father to raise the child; instead there is only a mother. It is reasonable for Georgia to place full responsibility for the illegitimate child on the parent who is present. This placing of full parental power in the mother is consistent with the public policy favoring marriage and the family because the father can choose to join the family (Code Ann. § 74-101), or can petition to legitimate the child (§ 74-103).

In the usual case, if the mother of an illegitimate child decides not to raise the child herself and consents to

adoption, the state's interest in promoting the family as an institution for child rearing is served since the child will be placed with the adopting family. If the consent of the natural father were also required he might refuse without accepting the responsibility of fatherhood, and the state could be required to sever his relationship before the adoption could proceed. In addition, since the father has already shown his lack of interest by his failure to legitimate the child, there would be a very real danger of profit seeking by the father in order to secure his consent to the adoption. Georgia's interest in seeing to the needs of children is served by the statutory scheme. When the illegitimate child's mother consents to adoption, the state and the mother's interest coincide and the child can be placed with a family.

The state's interest is even stronger under the facts of this case. For eleven years the natural father took no steps to legitimate the child or support him. Yet when the stepfather, married to the child's mother, wishes to adopt the boy and accept responsibility for him, the natural father suddenly opposes legal recognition of this family unit.

We find that neither Code Ann. § 74-203 nor § 74-403 (3) denies the natural father equal protection of the laws.[1]

The natural father contends that the Georgia statutes take away his parental rights without due process of law. He relies on Stanley v. Illinois, 405 U. S. 645 (1971). In Stanley, the Supreme Court held an Illinois statutory scheme unconstitutional which required a hearing and proof of unfitness before the state could assume custody of a child of married or divorced parents or unmarried mothers, yet required no such showing before separating a child from an unwed father. In Stanley, the father was a de facto member of the family unit,[2] and the mother had died. Either of these factual differences would

---

[1] See In re Adoption of Malpica-Orsini, 36 N. Y. 2d 568 (370 NYS2d 511, 331 NE2d 486) (1975), appeal dismissed, 423 U. S. 1042 (1976).

[2] Georgia recognizes common law marriages but Illinois does not.

be sufficient to distinguish Stanley from the case before us. We find that Stanley is not controlling and that Code Ann. §§ 74-203 and 74-403 (3) violate neither equal protection nor due process.

*Judgment affirmed. All the Justices concur, except Undercofler, P. J., Gunter and Ingram, JJ., who dissent.*

ARGUED OCTOBER 13, 1976 — DECIDED JANUARY 6, 1977 — REHEARING DENIED JANUARY 27, 1977.

*William L. Skinner,* for appellant.

*Thomas F. Jones,* for appellee.

*Arthur K. Bolton, Attorney General, Carol Atha Cosgrove, Staff Assistant Attorney General,* amicus curiae.

UNDERCOFLER, Presiding Justice, dissenting.

1. The majority summarily disposes of the due process issue in Stanley v. Illinois, 405 U. S. 645 (1971) on the facts of that case. It then disposes of the equal protection issue on the basis that it is reasonable to treat unwed fathers differently because state public policy favors adoption. The court thus misconstrues Stanley. Stanley holds that an unwed father has due process rights and that he is denied equal protection because all other parents except unwed fathers are entitled to due process. "[A]s a matter of due process of law, Stanley was entitled to a hearing on his fitness *as a parent* before his children were taken from him and that, by denying him a hearing and extending it to all other parents whose custody of their children is challenged, the State denied Stanley the equal protection of the laws guaranteed by the Fourteenth Amendment." Stanley v. Illinois, supra, p. 649. (Emphasis supplied.)

The majority dismisses the due process right as merely a de facto right, which accrued from the fact that Stanley had intermittently lived with the mother and his children over an eighteen-year period.[1] On the contrary,

---

[1] The children were not then living with the father,

the Supreme Court held that Stanley's due process rights stemmed from the biological fact of paternity.[2] This is made clear in a footnote: "If unwed fathers, in the main, do not care about the disposition of their children, they will not appear to demand hearings. If they do care, . . . Illinois would admittedly at some later time *have to afford them a properly focused hearing in a custody or adoption proceeding.*" Stanley v. Illinois, supra, p. 657, n. 9. (Emphasis supplied.) The court even approved notice by publication to "All whom it may Concern," where the father was unknown or had disappeared. See footnote 9, supra. Thus the Stanley majority intended to recognize the due process rights of *all* natural fathers, not merely those who live with their families.

The majority, I think, also misconstrues the basis of the equal protection claim in Stanley. I agree with the majority that the state has a rational basis in promoting the legitimation of the children of unwed fathers. Further, I know of no public policy of this state favoring adoption by strangers over being raised by one's own father. The crux of the claim in Stanley, however, is that because an unwed father has due process rights in his children, it is a denial of equal protection to treat him differently than other parents.[3] Thus based on the due process right, which the majority does not accept, the equal protection claim is not so easily dismissed on state

---

but had been left by the father with another couple. Stanley v. Illinois, supra, at p. 663, n. 2.

[2] See also Gomez v. Perez, 409 U. S. 535 (1973) (unacknowledged illegitimates have a cause of action against their natural fathers for support); Glona v. American Guarantee Co., 391 U. S. 73, 75 (1968).

[3] " 'To say that the test of equal protection should be the "legal" rather than the biological relationship is to avoid the issue. For the Equal Protection Clause necessarily limits the authority of a state to draw such "legal" lines as it chooses.' Glona v. American Guarantee Co., 391 U. S. 73, 75-76 (1968)." Stanley v. Illinois, supra, p. 652.

public policy grounds. On this distinction, I would hold that Code Ann. § 74-403 (3) denies unwed fathers due process and the equal protection of the laws as was held by the Supreme Court in Stanley.

This position is fortified by the remand of two cases to their respective state courts in light of Stanley. Rothstein v. Lutheran Social Services, 405 U. S. 1051 (1972), vacating and remanding, State v. Lutheran Social Services, 47 Wis. 2d 420 (178 NW2d 56) (1970); Vanderlaan v. Vanderlaan, 405 U. S. 1051 (1972), vacating and remanding, 126 Ill. App. 2d 410 (262 NE2d 717) (1970). On remand, the Wisconsin Supreme Court held, in a case similar to this one, that an adoption which had taken place without terminating the rights, or without the consent, of the unwed father was invalid in light of Stanley. The Wisconsin Court said, "The Supreme Court decided two things: (1) that the denial of a natural father's parental rights to a child born out of wedlock based on mere illegitimacy violated his constitutional right to equal protection of the laws, and (2) that the termination of a natural father's parental rights to a child born out of wedlock without actual notice to him, if he was known, or constructive notice, if unknown, and without giving him the right to be heard on the termination of his rights denied him due process of law." State v. Lutheran Social Services, 59 Wis. 2d 1 (207 NW2d 826, 828) (1973). Likewise, the Appellate Court of Illinois on the remand of Vanderlaan v. Vanderlaan, 9 Ill. App. 3d 260 (292 NE2d 145) (1972), interpreted Stanley as having recognized that unwed fathers have protectable rights in their children. See also Miller v. Miller, 504 F2d 1067 (9th Cir., 1974); Willmott v. Decker, 541 P2d 13 (Ha., 1975); Forestiere v. Doyle, 30 Conn. Sup. 284 (310 A2d 607) (1973); State v. Lutheran Social Services, supra; People v. Covenant Children's Home, 52 Ill. 2d 20 (284 NE2d 291) (1972); Doe v. Dept. of Social Services, 337 NYS2d 102 (1972); In re Harp, 6 Wash. App. 701 (495 P2d 1059) (1972); In re Brennan, 270 Minn. 455 (134 NW2d 126) (1965). But see, In re Adoption of Malpica-Orsini, 36 N. Y. 2d 568 (370 NYS 2d 511, 331 NE2d 486) (1975), appeal dismissed, 423 U. S. 1042 (1976).

2. I concur with the majority that Code Ann. §

74-203 arbitrarily placing the parental power of the illegitimate child in the mother, rather than in the father as for legitimate children, has a rational basis in state policy. It is clear from Labine v. Vincent, 401 U. S. 532 (1971) that the state may make such determinations of family relationships. This section may be distinguished from Code Ann. § 74-403 (3) because it does not purport to deprive the other parent of all parental rights.

Because of my position stated in Division 1, however, I must dissent.

I am authorized to state that Justices Gunter and Ingram join in this dissent.