QUILLOIN *v.* WALCOTT ET VIR

No. 76–6372.   Argued November 9, 1977—Decided January 10, 1978

*William L. Skinner* argued the cause and filed a brief for appellant.

*Thomas F. Jones* argued the cause for appellees *pro hac vice.* With him on the brief was *S. Ralph Martin, Jr.*

MR. JUSTICE MARSHALL delivered the opinion of the Court.

The issue in this case is the constitutionality of Georgia's adoption laws as applied to deny an unwed father authority to prevent adoption of his illegitimate child. The child was born in December 1964 and has been in the custody and control of his mother, appellee Ardell Williams Walcott, for his entire life. The mother and the child's natural father, appellant Leon Webster Quilloin, never married each other or established a home together, and in September 1967 the mother married appellee Randall Walcott.[1] In March 1976, she consented to adoption of the child by her husband, who immediately filed a petition for adoption. Appellant attempted to block the adoption and to secure visitation rights, but he did not seek custody or object to the child's continuing to live with appellees. Although appellant was not found to be an unfit parent, the adoption was granted over his objection.

In *Stanley* v. *Illinois,* 405 U. S. 645 (1972), this Court held that the State of Illinois was barred, as a matter of both due process and equal protection, from taking custody of the children of an unwed father, absent a hearing and a particular-

---

[1] The child lived with his maternal grandmother for the initial period of the marriage, but moved in with appellees in 1969 and lived with them thereafter.

ized finding that the father was an unfit parent. The Court concluded, on the one hand, that a father's interest in the "companionship, care, custody, and management" of his children is "cognizable and substantial," *id.*, at 651–652, and, on the other hand, that the State's interest in caring for the children is *"de minimis"* if the father is in fact a fit parent, *id.*, at 657–658. *Stanley* left unresolved the degree of protection a State must afford to the rights of an unwed father in a situation, such as that presented here, in which the countervailing interests are more substantial.

## I

Generally speaking, under Georgia law a child born in wedlock cannot be adopted without the consent of each living parent who has not voluntarily surrendered rights in the child or been adjudicated an unfit parent.[2] Even where the child's parents are divorced or separated at the time of the adoption proceedings, either parent may veto the adoption. In contrast, only the consent of the mother is required for adoption of an illegitimate child. Ga. Code § 74–403 (3) (1975).[3] To

---

[2] See Ga. Code §§ 74–403 (1), (2) (1975). Section 74–403 (1) sets forth the general rule that "no adoption shall be permitted except with the written consent of the living parents of a child." Section 74–403 (2) provides that consent is not required from a parent who (1) has surrendered rights in the child to a child-placing agency or to the adoption court; (2) is found by the adoption court to have abandoned the child, or to have willfully failed for a year or longer to comply with a court-imposed support order with respect to the child; (3) has had his or her parental rights terminated by court order, see Ga. Code § 24A–3201; (4) is insane or otherwise incapacitated from giving consent; or (5) cannot be found after a diligent search has been made.

[3] Section 74–403 (3), which operates as an exception to the rule stated in § 74–403 (1), see n. 2, *supra*, provides:

"Illegitimate children.—If the child be illegitimate, the consent of the mother alone shall suffice. Such consent, however, shall not be required if the mother has surrendered all of her rights to said child to a licensed

acquire the same veto authority possessed by other parents, the father of a child born out of wedlock must legitimate his offspring, either by marrying the mother and acknowledging the child as his own, § 74–101, or by obtaining a court order declaring the child legitimate and capable of inheriting from the father, § 74–103.[4] But unless and until the child is legitimated, the mother is the only recognized parent and is given exclusive authority to exercise all parental prerogatives, § 74–203,[5] including the power to veto adoption of the child.

Appellant did not petition for legitimation of his child at any time during the 11 years between the child's birth and the filing of Randall Walcott's adoption petition.[6] However, in

---

child-placing agency, or to the State Department of Family and Children Services."

Sections of Ga. Code (1975) will hereinafter be referred to merely by their numbers.

[4] Section 74–103 provides in full:

"A father of an illegitimate child may render the same legitimate by petitioning the superior court of the county of his residence, setting forth the name, age, and sex of such child, and also the name of the mother; and if he desires the name changed, stating the new name, and praying the legitimation of such child. Of this application the mother, if alive, shall have notice. Upon such application, presented and filed, the court may pass an order declaring said child to be legitimate, and capable of inheriting from the father in the same manner as if born in lawful wedlock, and the name by which he or she shall be known."

[5] Section 74–203 states:

"The mother of an illegitimate child shall be entitled to the possession of the child, unless the father shall legitimate him as before provided. Being the only recognized parent, she may exercise all the paternal power."

In its opinion in this case, the Georgia Supreme Court indicated that the word "paternal" in the second sentence of this provision is the result of a misprint, and was instead intended to read "parental." See 238 Ga. 230, 231, 232 S. E. 2d 246, 247 (1977).

[6] It does appear that appellant consented to entry of his name on the child's birth certificate. See § 88–1709 (d) (2). The adoption petition gave the name of the child as "Darrell Webster Quilloin," and appellant

response to Walcott's petition, appellant filed an application for a writ of habeas corpus seeking visitation rights, a petition for legitimation, and an objection to the adoption.[7] Shortly thereafter, appellant amended his pleadings by adding the claim that §§ 74–203 and 74–403 (3) were unconstitutional as applied to his case, insofar as they denied him the rights granted to married parents, and presumed unwed fathers to be unfit as a matter of law.

The petitions for adoption, legitimation, and writ of habeas corpus were consolidated for trial in the Superior Court of Fulton County, Ga. The court expressly stated that these matters were being tried on the basis of a consolidated record to allow "the biological father . . . a right to be heard with respect to any issue or other thing upon which he desire[s] to be heard, including his fitness as a parent . . . ."[8] After receiving extensive testimony from the parties and other wit-

---

alleges in his brief that the child has always been known by that name, see Brief for Appellant 11.

[7] Appellant had been notified by the State's Department of Human Resources that an adoption petition had been filed.

[8] *In re: Application of Randall Walcott for Adoption of Child,* Adoption Case No. 8466 (Ga. Super. Ct., July 12, 1976), App. 70.

Sections 74–103, 74–203, and 74–403 (3) are silent as to the appropriate procedure in the event that a petition for legitimation is filed after an adoption proceeding has already been initiated. Prior to this Court's decision in *Stanley v. Illinois,* 405 U. S. 645 (1972), and without consideration of potential constitutional problems, the Georgia Supreme Court had concluded that an unwed father could not petition for legitimation after the mother had consented to an adoption. *Smith v. Smith,* 224 Ga. 442, 445–446, 162 S. E. 2d 379, 383–384 (1968). But cf. *Clark v. Buttry,* 226 Ga. 687, 177 S. E. 2d 89 (1970), aff'g 121 Ga. App. 492, 174 S. E. 2d 356. However, the Georgia Supreme Court had not had occasion to reconsider this conclusion in light of *Stanley,* and, in the face of appellant's constitutional challenge to §§ 74–203, 74–403 (3), the trial court evidently concluded that concurrent consideration of the legitimation and adoption petitions was consistent with the statutory provisions. See also Tr. of Hearing before Superior Court, App. 34, 51; n. 12, *infra.*

nesses, the trial court found that, although the child had never been abandoned or deprived, appellant had provided support only on an irregular basis.[9]   Moreover, while the child previously had visited with appellant on "many occasions," and had been given toys and gifts by appellant "from time to time," the mother had recently concluded that these contacts were having a disruptive effect on the child and on appellees' entire family.[10]   The child himself expressed a desire to be adopted by Randall Walcott and to take on Walcott's name,[11] and the court found Walcott to be a fit and proper person to adopt the child.

On the basis of these findings, as well as findings relating to appellees' marriage and the mother's custody of the child for all of the child's life, the trial court determined that the proposed adoption was in the "best interests of [the] child." The court concluded, further, that granting either the legitimation or the visitation rights requested by appellant would not be in the "best interests of the child," and that both should consequently be denied.   The court then applied §§ 74–203 and 74–403 (3) to the situation at hand, and, since appellant had failed to obtain a court order granting legitimation, he was found to lack standing to object to the adoption.

---

[9] Under § 74–202, appellant had a duty to support his child, but for reasons not appearing in the record the mother never brought an action to enforce this duty.   Since no court ever ordered appellant to support his child, denial of veto authority over the adoption could not have been justified on the ground of willful failure to comply with a support order. See n. 2, *supra.*

[10] In addition to Darrell, appellees' family included a son born several years after appellees were married.   The mother testified that Darrell's visits with appellant were having unhealthy effects on both children.

[11] The child also expressed a desire to continue to visit with appellant on occasion after the adoption.   The child's desire to be adopted, however, could not be given effect under Georgia law without divesting appellant of any parental rights he might otherwise have or acquire, including visitation rights.   See § 74–414.

Ruling that appellant's constitutional claims were without merit, the court granted the adoption petition and denied the legitimation and visitation petitions.

Appellant took an appeal to the Supreme Court of Georgia, claiming that §§ 74–203 and 74–403 (3), as applied by the trial court to his case, violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment. In particular, appellant contended that he was entitled to the same power to veto an adoption as is provided under Georgia law to married or divorced parents and to unwed mothers, and, since the trial court did not make a finding of abandonment or other unfitness on the part of appellant, see n. 2, *supra,* the adoption of his child should not have been allowed.

Over a dissent which urged that § 74–403 (3) was invalid under *Stanley* v. *Illinois,* the Georgia Supreme Court affirmed the decision of the trial court. 238 Ga. 230, 232 S. E. 2d 246 (1977).[12] The majority relied generally on the strong state policy of rearing children in a family setting, a policy which in the court's view might be thwarted if unwed fathers were required to consent to adoptions. The court also emphasized the special force of this policy under the facts of this case, pointing out that the adoption was sought by the child's stepfather, who was part of the family unit in which the child was

---

[12] The Supreme Court addressed itself only to the constitutionality of the statutes as applied by the trial court and thus, at least for purposes of this case, accepted the trial court's construction of §§ 74–203 and 74–403 (3) as allowing concurrent consideration of the adoption and legitimation petitions. See n. 8, *supra.*

Subsequent to the Supreme Court's decision in this case, the Georgia Legislature enacted a comprehensive revision of the State's adoption laws, which became effective January 1, 1978. 1977 Ga. Laws 201. The new law expressly gives an unwed father the right to petition for legitimation subsequent to the filing of an adoption petition concerning his child. See Ga. Code § 74–406 (1977 Supp.). The revision also leaves intact §§ 74–103 and 74–203, and carries forward the substance of § 74–403 (3), and thus appellant would not have received any greater protection under the new law than he was actually afforded by the trial court.

in fact living, and that the child's natural father had not taken steps to support or legitimate the child over a period of more than 11 years. The court noted in addition that, unlike the father in *Stanley,* appellant had never been a *de facto* member of the child's family unit.

Appellant brought this appeal pursuant to 28 U. S. C. § 1257 (2), continuing to challenge the constitutionality of §§ 74–203 and 74–403 (3) as applied to his case, and claiming that he was entitled as a matter of due process and equal protection to an absolute veto over adoption of his child, absent a finding of his unfitness as a parent. In contrast to appellant's somewhat broader statement of the issue in the Georgia Supreme Court, on this appeal he focused his equal protection claim solely on the disparate statutory treatment of his case and that of a married father.[13] We noted probable jurisdiction, 431 U. S. 937 (1977), and we now affirm.

## II

At the outset, we observe that appellant does not challenge the sufficiency of the notice he received with respect to the adoption proceeding, see n. 7, *supra,* nor can he claim that he was deprived of a right to a hearing on his individualized interests in his child, prior to entry of the order of adoption. Although the trial court's ultimate conclusion was that appellant lacked standing to object to the adoption, this conclusion was reached only after appellant had been afforded a full hearing on his legitimation petition, at which he was given the opportunity to offer evidence on any matter he thought relevant, including his fitness as a parent. Had the trial court

---

[13] In the last paragraph of his brief, appellant raises the claim that the statutes make gender-based distinctions that violate the Equal Protection Clause. Since this claim was not presented in appellant's jurisdictional statement, we do not consider it. This Court's Rule 15 (1)(c); see, *e. g., Phillips Chem. Co.* v. *Dumas School Dist.,* 361 U. S. 376, 386, and n. 12 (1960).

granted legitimation, appellant would have acquired the veto authority he is now seeking.

The fact that appellant was provided with a hearing on his legitimation petition is not, however, a complete answer to his attack on the constitutionality of §§ 74–203 and 74–403 (3). The trial court denied appellant's petition, and thereby precluded him from gaining veto authority, on the ground that legitimation was not in the "best interests of the child"; appellant contends that he was entitled to recognition and preservation of his parental rights absent a showing of his "unfitness." Thus, the underlying issue is whether, in the circumstances of this case and in light of the authority granted by Georgia law to married fathers, appellant's interests were adequately protected by a "best interests of the child" standard. We examine this issue first under the Due Process Clause and then under the Equal Protection Clause.

## A

Appellees suggest that due process was not violated, regardless of the standard applied by the trial court, since any constitutionally protected interest appellant might have had was lost by his failure to petition for legitimation during the 11 years prior to filing of Randall Walcott's adoption petition. We would hesitate to rest decision on this ground, in light of the evidence in the record that appellant was not aware of the legitimation procedure until after the adoption petition was filed.[14] But in any event we need not go that far, since under the circumstances of this case appellant's substantive rights were not violated by application of a "best interests of the child" standard.

---

[14] At the hearing in the trial court, the following colloquy took place between appellees' counsel and appellant:

"Q Had you made any effort prior to this time [prior to the instant proceedings], during the eleven years of Darrell's life to legitimate him?

"A . . . I didn't know that was process even you went through [sic]." App. 58.

We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected. See, *e. g., Wisconsin* v. *Yoder,* 406 U. S. 205, 231–233 (1972); *Stanley* v. *Illinois, supra; Meyer* v. *Nebraska,* 262 U. S. 390, 399–401 (1923). "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Prince* v. *Massachusetts,* 321 U. S. 158, 166 (1944). And it is now firmly established that "freedom of personal choice in matters of . . . family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment." *Cleveland Board of Education* v. *LaFleur,* 414 U. S. 632, 639–640 (1974).

We have little doubt that the Due Process Clause would be offended "[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest." *Smith* v. *Organization of Foster Families,* 431 U. S. 816, 862–863 (1977) (STEWART, J., concurring in judgment). But this is not a case in which the unwed father at any time had, or sought, actual or legal custody of his child. Nor is this a case in which the proposed adoption would place the child with a new set of parents with whom the child had never before lived. Rather, the result of the adoption in this case is to give full recognition to a family unit already in existence, a result desired by all concerned, except appellant. Whatever might be required in other situations, we cannot say that the State was required in this situation to find anything more than that the adoption, and denial of legitimation, were in the "best interests of the child."

B

Appellant contends that even if he is not entitled to prevail as a matter of due process, principles of equal protection require that his authority to veto an adoption be measured by

the same standard that would have been applied to a married father. In particular, appellant asserts that his interests are indistinguishable from those of a married father who is separated or divorced from the mother and is no longer living with his child, and therefore the State acted impermissibly in treating his case differently. We think appellant's interests are readily distinguishable from those of a separated or divorced father, and accordingly believe that the State could permissibly give appellant less veto authority than it provides to a married father.

Although appellant was subject, for the years prior to these proceedings, to essentially the same child-support obligation as a married father would have had, compare § 74–202 with § 74–105 and § 30–301, he has never exercised actual or legal custody over his child, and thus has never shouldered any significant responsibility with respect to the daily supervision, education, protection, or care of the child. Appellant does not complain of his exemption from these responsibilities and, indeed, he does not even now seek custody of his child. In contrast, legal custody of children is, of course, a central aspect of the marital relationship, and even a father whose marriage has broken apart will have borne full responsibility for the rearing of his children during the period of the marriage. Under any standard of review, the State was not foreclosed from recognizing this difference in the extent of commitment to the welfare of the child.

For these reasons, we conclude that §§ 74–203 and 74–403 (3), as applied in this case, did not deprive appellant of his asserted rights under the Due Process and Equal Protection Clauses. The judgment of the Supreme Court of Georgia is, accordingly,

*Affirmed.*