**In the Interest of T. E. T.**

No. 6012.

Court of Civil Appeals of Texas, Waco.

June 14, 1979.

Rehearing Denied July 5, 1979.

John V. Elick, Elick & Elick, Bellville, for appellant.

James E. Doyle, Foreman, Dyess, Prewett, Rosenberg & Henderson, Houston, George R. Moorman, Moorman & Tate, Brenham, Phyllis M. Bell, Houston, for appellees.

HALL, Justice.

The female child in question was born illegitimate on March 10, 1977. The child's mother is appellee Cynthia T⸺ (hereinafter, "Cynthia"). She was 14 years of age when the child was conceived. It is undisputed in the record that the child's biological father is appellant J. O. He was 18 when the child was conceived. In October, 1976, Cynthia moved into a home provided for unwed mothers by plaintiff-appellee Catholic Charities of the Diocese of Galveston-Houston. She remained in the home until the child was born. She and J. O. never married, and she was unwed at the time of trial.

After the child was born, Cynthia executed an affidavit in which she irrevocably relinquished her parental rights to plaintiff Catholic Charities and named plaintiff managing conservator of the child, under the provisions of V.T.C.A. Family Code § 15.03. The child is presently in a foster home.

Adoptive parents have been approved by plaintiff, but the adoption awaits the outcome of this lawsuit.

Plaintiff filed this suit on March 21, 1977, in the 313th Judicial District Court of Harris County, Texas, to terminate the parent-child relationship between Cynthia and the child under the provisions of Family Code § 15.02(1)(I); to be appointed managing conservator of the child as provided by Family Code § 15.05(b); and to be appointed guardian ad litem of the child under the provisions of Family Code § 11.10(a). The relief sought was alleged to be in the best interests of the child. Plaintiff pleaded it is an "authorized agency" within the terms of Family Code § 11.01(7), approved and authorized by the State Department of Public Welfare to care for children and to place them for adoption. It also alleged that Cynthia had executed the irrevocable affidavit of relinquishment of parental rights to plaintiff and named it managing conservator of the child. (The affidavit, in evidence, was actually executed by Cynthia on May 11, 1977, after plaintiff filed its suit, but Family Code § 15.02(1)(I) provides that termination may be based on an irrevocable affidavit executed before or after the suit is filed).

In his initial pleading in the case, filed August 25, 1977, J. O. moved the court to transfer the suit to the 155th Judicial District Court of Austin County, Texas, asserting that in a proceeding filed by him there he had been adjudged to be the natural and legitimate father of the child and had been appointed managing conservator of the child; that plaintiff Catholic Diocese and Cynthia were properly joined as parties in that suit but defaulted; and that under the provisions of Family Code § 11.05 the Court in Austin County had continuing jurisdiction over the matter in controversy in the present suit. He also moved for change of venue to Austin County on the ground that both he and Cynthia were residents of that County. Both motions were duly controverted by plaintiff on several grounds.

After a hearing before the court without a jury on September 14, 1977, J. O.'s motions to transfer and for change of venue were overruled by written order on October 7, 1977. The order recites that evidence was adduced on the motions.

Thereafter, additional pleadings were filed by the parties, and the case was tried to a jury in December, 1977, on these basic pleadings by the parties: J. O. generally denied the allegations in plaintiff's petition, and pleaded for voluntary legitimation of the child and a decree designating him as the father of the child, under the provisions of Family Code § 13.01, and for judgment appointing him managing conservator of the child, alleging that he was a fit person to be named parent and managing conservator and that the orders he sought were in the best interest of the child. Plaintiff restated the pleadings set forth in its original petition and also alleged it "would require [J. O.] prove by a preponderance of the evidence that it is in the best interest of the child for [him] to be designated as parent of the child." Cynthia contested J. O.'s petition for legitimation; asserted that he could not properly care for the child and was not a fit person to have custody of the child; alleged that his sole purpose in seeking to be declared parent of the child was "to forestall and prevent a criminal action for statutory rape" stemming from his sexual intercourse with Cynthia; denied that it was in the best interest of the child for J. O. to be adjudged the child's parent; and pleaded that the best interest of the child would be served by granting the relief sought by plaintiff.

The two special issues submitted to the jury, and the jury's answers to the issues, were as follows:

SPECIAL ISSUE NO. 1: Do you find from a preponderance of the evidence that it would be in the best interest of the child, [T.E.T.], to terminate the parental rights of [Cynthia].

Answer, "We do" or "We do not."

ANSWER: We do.

SPECIAL ISSUE NO. 2: Do you find from a preponderance of the evidence that it is in the best interest of the child, [T.E.T.], that this Court designate [J. O.] her parent?

Answer, "He should be designated her parent" or
"He should not be designated her parent."

ANSWER: <u>He should not be designated her parent.</u>

In connection with the special issues, the court gave the jury these instructions:

Parent means the mother, a man as to whom the child is legitimate, or an adoptive mother or father, but does not include a parent as to whom the parent-child relationship has been terminated.

You are instructed that absent a marital relationship between the biological father and the mother of the child, the biological father is not a parent of the child and does not have the rights of a parent. The parent-child relationship means all the rights, privileges, duties and powers existing between a parent and child. You are further instructed that a biological father may petition to legitimate the child and show that it would be in the best interest of the child to allow him to legitimate the child.

In determining these special issues, you shall consider the circumstances of [J. O.] without regard to his sex.

Judgment was rendered terminating the parent-child relationship between Cynthia and the child; denying J. O.'s petition for legitimation and managing conservatorship; and appointing plaintiff managing conservator. The judgment recites that it was based upon the verdict; upon the irrevocable affidavit of relinquishment of parental rights executed by Cynthia; and upon the court's findings "on the merits" that termination of the parent-child relationship and appointment of plaintiff as managing conservator were in the best interests of the child, but that designation of J. O. as parent was not in the best interests of the child.

J. O. brought this appeal. He does not contend that either answer of the jury to the special issues is not supported by legally or factually sufficient evidence; and although he does assign error to the court's failure to give the jury an instruction he requested, he does not attack any instruction given by the court.

■ Several assignments of error by J. O. are based upon the proposition that the rights of the biological father and the unwed mother in relation to their child are treated unequally in favor of the mother in the Texas Family Code, and that accordingly he has been denied due process under the Federal Constitution. He tacitly concedes in his brief that his contentions of denial of due process were raised by the biological father and rejected by our Supreme Court in the case of *In Interest of K,* (Tex.1976) 535 S.W.2d 168, certiorari denied 429 U.S. 907, 97 S.Ct. 273, 50 L.Ed.2d 189 (1976), rehearing denied 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 620 (1976); and they were. Of course, we follow the rulings of our Supreme Court on those questions. *Swilley v. McCain,* (Tex.1964) 374 S.W.2d 871, 875.

■ Error is assigned to the orders overruling his motion to transfer the case to the District Court in Austin County and his motion for change of venue to that court. As we have said, the orders reflect that proof was heard on the motions. The record before us does not contain a statement of the facts adduced on that hearing, although J. O. was granted leave to file it. Findings of fact and conclusions of law related to the hearing were not requested by the parties nor filed by the court. Therefore, we must presume the proof made on the hearing supported the court's implied findings and rulings on the motions. *Mays v. Pierce,* 154 Tex. 487, 281 S.W.2d 79, 82 (1955); *Ehrhardt v. Ehrhardt,* 368 S.W.2d 37, 38 (Tex.Civ.App.—Waco 1963, writ ref'd). For example, we must presume the evidence established that the present suit was filed by plaintiff before J. O. filed the Austin County suit. If the present suit in Harris County was filed first, then the suit in Austin County also involving the best interests of the child was abated by the previously filed suit and the orders issued by the Court in Austin County affecting the child were void. *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063, 1071, 1075 (1926).

Some of the remaining assignments of error were not preserved for appellate re-

view by proper and timely objection. None presents reversible error under the record. All are overruled.

The judgment is affirmed.