312 N.W.2d 718 (1981)
In the Matter of F. J. F., and F. M. F., Alleged Dependent and Neglected Children.
No. 13457.
Supreme Court of South Dakota.
Submitted on Briefs September 30, 1981.
Decided November 25, 1981.
Roger C. Lerud, Asst. Atty. Gen., Pierre, for appellants; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.
Burleigh Boldt of Shandorf, Bleeker, Boldt & Koch, Mitchell, for appellee.
FOSHEIM, Justice.
This case began as a dependency and neglect proceeding. Following the adjudication hearing an order was entered declaring F.J.F. and F.M.F., nonidentical twins, dependent and neglected children. Six days later, on February 5, 1980, a dispositional hearing was held. The court ordered termination of the parental rights of the mother and F.R., the alleged father. The order *719 noted that F.R. appeared personally, denied paternity, and consented to the termination of any parental rights in the twins which he may have had. The court thereupon granted the Department of Social Services permanent custody of the twins for purposes of adoption.
On May 29, 1980 Mr. Henkel petitioned the court to reopen the dependency and neglect proceedings for the purpose of determining his claimed paternity of, and custody rights to, the twins. Mr. Henkel alleged he was not given notice of the dependency and neglect proceedings. The trial court granted his petition and on June 25, 1980 heard his testimony and accepted evidence, introduced by the State, of the cost incurred by the State of South Dakota for the care and medical expenses of the twins. The trial court then ordered that the mother, the children and Mr. Henkel submit to blood tests for the purpose of determining paternity. The State and Mr. Henkel stipulated that if such blood tests showed a paternity index of 95 percent or greater, in support of Mr. Henkel's claim, his paternity would be established.
Thereafter, the State moved to dismiss for lack of subject matter jurisdiction claiming that Mr. Henkel had notice of the termination hearings but failed to appear and assert his parental rights; that the Statute of Limitations had run for an appeal from the trial court's dispositional order; and that the statutory requirements for reopening a dispositional hearing, pursuant to SDCL 26-8-63,[1] were not met. At the hearing on the motion to dismiss, the trial court admitted into evidence the results of the blood tests and letters from Dr. Poleskey, who analyzed the tests.
On March 6, 1981, the trial court held the final paternity hearing to determine whether Mr. Henkel was the twins' father. Subsequent to this hearing the trial court entered findings of fact which stated, in part, that the parental rights of the mother were terminated by the court; that the mother named one F.R., her live-in companion, as the twins' father; that F.R. denied paternity, and that any parental rights to the twins which he may have had were terminated; that Mr. Henkel and the mother of the twins had sexual intercourse on December 10 and 11, 1978, and that the twins were born nine months later; that the blood tests showed a 97.27 percent likelihood that Mr. Henkel was the father of the male twin and a 0 percent possibility that he was the father of the female twin; and that although it is rare for twins to have separate fathers, it is possible. The trial court determined that Mr. Henkel is the father of the male twin but not the female twin and ordered the Department of Social Services to retain custody of the twins until the matter was decided on appeal or the time for appeal had elapsed. The State thereupon appealed from the trial court's judgment. We affirm.
We first address the issue of whether the trial court had jurisdiction to reopen the proceedings to determine paternity. The State contends that the jurisdiction of the trial court to hear dependency and neglect actions is governed by SDCL ch. 26-8 and, since these proceedings were instituted pursuant to that chapter, SDCL 26-8-63 expresses the controlling procedure. The State argues that no "new evidence has been discovered which was not known and could not with due diligence have been made available at the original hearing and which might affect the decree," as SDCL 26-8-63 requires.
The State maintains that Mr. Henkel had actual or constructive notice of the adjudication hearing and that his evidence *720 of sexual intercourse with the mother was then known to him and should have been presented at that time. Although the notice testimony is conflicting as to the adjudication hearing, the record clearly indicates that Mr. Henkel had actual knowledge of the disposition hearing and that he believed he was the father. Mr. Henkel's stated reason for not then asserting paternity was that he did not want to disturb the possibility of the mother's family obtaining custody of the twins, if they so desired.
The claim upon which Mr. Henkel petitioned could not be termed "new evidence" until the trial court had an opportunity to judge whether Mr. Henkel's suspicions that he was the father were more than that. When Mr. Henkel appeared on the scene, no one, including Mr. Henkel, knew for certain who was the father of the twins. The mother did not claim he was the father and F.R., the alleged father, denied paternity. When parentage had been scientifically tested, however, new and material evidence clearly was available which might affect the original decree and the trial court could revise its disposition accordingly.
We believe, however, that an additional, fundamental question of law was activated by the facts. It relates to whether Mr. Henkel could be denied the opportunity to be heard on his claim of paternity. We believe the Due Process Clause of the Fourteenth Amendment to the United States Constitution required the trial court to hear Mr. Henkel's paternity claim and transcended any statute that might otherwise preclude such a hearing. Mr. Henkel had a right to an opportunity to establish his liberty interest as a parent. This interest is guaranteed by the Fourteenth Amendment and protected by the Due Process Clause. The United States Supreme Court has stated:
While this Court has not attempted to define with exactness the liberty thus guaranteed, the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to ... establish a home and bring up children, ... and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, 1045 (1923) (citations omitted).
In Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), an unwed father attacked Illinois' statutory scheme which allowed his children to be taken from his custody upon proof of the death of the children's mother. Mr. Stanley was not allowed a hearing to establish his fitness as a parent. The United States Supreme Court determined that Mr. Stanley was entitled, as a matter of due process, to such a hearing.
The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children `come(s) to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.'
Id. at 651, 92 S.Ct. at 1212 (citations omitted).
In Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), an unwed father petitioned the court to legitimize his child and prevent the child's adoption by the child's stepfather. The child was then eleven years of age. While the father's petition was denied, his right to a full hearing on his legitimation claim was recognized and granted. The Quilloin court reaffirmed the constitutional protections granted the family relationship.
We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected. `It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations *721 the state can neither supply nor hinder.' And it is now firmly established that `freedom of personal choice in matters of ... family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment.'
Id. at 255, 98 S.Ct. at 554 (citations omitted).
We conclude from the peculiar circumstances of this case that the trial court did not err in ordering a new hearing pursuant to SDCL 26-8-63 and that the constitutional principles expounded in Mayer, Stanley and Quilloin logically mandated the trial court, by virtue of the Due Process Clause, to grant Mr. Henkel a hearing on his paternity claim. Lest our holding be read too broadly, however, we recognize that circumstances may very well exist whereby a right to a paternity hearing must be deemed waived and yield to other considerations.
The State also claims the trial court erred when it refused to allow it to introduce evidence concerning Mr. Henkel's parental fitness. The trial court properly excluded that evidence. The sole issue before the court at this hearing was his paternity. Cf. Matter of Adoption of Zimmer, 299 N.W.2d 574 (S.D.1980) (trial court cannot consider adoption prior to determining whether the natural parent abandoned his children).
The State next complains that Mr. Henkel must prove his paternity by clear and convincing evidence and that he failed to do so. The State cites Smith v. Smith, 71 S.D. 305, 24 N.W.2d 8 (1946), as authority for the clear and convincing burden. In Smith the appellant attempted to prove he was not the father of a child born of his former wife. The child was born eight months after the appellant and his former wife were divorced. There is a presumption of legitimacy which operates under such circumstances, and the Smith court correctly held such presumption could only be overcome by the greater burden of clear and convincing evidence. Here there is no presumption to overcome. In a civil paternity proceeding the quantum of required proof is a preponderance of the evidence. Cudmore v. Cudmore, 311 N.W.2d 47 (S.D. 1981). Vander Werf v. Anderson, 86 S.D. 321, 195 N.W.2d 145 (1972). Although Vander Werf was an action brought by the mother of the child against the alleged father, we see no reason to impose a different burden of proof upon Mr. Henkel.
Additionally, the State's argument ignores the fact that it proposed to Mr. Henkel the stipulation stating that his paternity would be established if the blood tests indicated a paternity index of 95 percent or greater in his favor. Mr. Henkel agreed to this proffered stipulation and, based thereon, his paternity of the male twin would be established.
Upon a review of the evidence, we conclude that the trial court's finding of paternity was not clearly erroneous.
Appellant also urges that the trial court should have allowed the State costs, pursuant to SDCL 15-17-1.[2] Since the State was not the prevailing party, costs were properly denied. We do agree, however, with the State's further contention that the trial court improperly refused to order Mr. Henkel to reimburse the State for the costs it incurred for the care and medical expenses of the male twin. We believe such a legislative intent is manifest in SDCL 25-8-1, -2, -3, and -7.[3]
*722 The State raises other issues which we find are either without merit or unnecessary to decide in view of the conclusions reached.
We affirm the trial court's order that Mr. Henkel is the father of the male twin. We remand for a determination of reimbursement to the State for the expense incurred for the care and medical expenses of the male twin.
All the Justices concur.
NOTES
[1] SDCL 26-8-63 reads:

A parent, guardian, custodian, or next friend of any child adjudicated under this chapter, may petition the court for a new hearing on the ground that new evidence has been discovered which was not known and could not with due diligence have been made available at the original hearing and which might affect the decree.
If it appears to the court that there is such new evidence which might affect the original decree, it shall order a new hearing and shall make such disposition of the case as warranted by all the facts and circumstances and the best interest of the child.
[2] SDCL 15-17-1 reads:

In civil actions and in certiorari, mandamus, and prohibition proceedings, there may be allowed to the prevailing party certain sums by way of indemnity for his expenses in the action or proceeding, which allowances are termed "costs."
[3] SDCL 25-8-1 reads:

The obligation of the parent to support the child under the laws for the support of poor relatives applies to children born out of wedlock.
SDCL 25-8-2 reads:
The parents of a child born out of wedlock and not legitimated (in this chapter referred to as "the child") owe the child necessary maintenance, education, and support.
They are also liable for the child's funeral expenses.
SDCL 25-8-3 reads:
The father is also liable to pay the expenses of the mother's pregnancy and confinement.
SDCL 25-8-7 reads:
Proceedings to compel support by the father may be brought in accordance with §§ 25-8-8 to 25-8-41, inclusive. They shall not be exclusive of other proceedings that may be available on principles of law or equity.