*558 OPINION OF THE COURT
Bernard E. Stanger, J.
In the matter presently before this court, the parties designated as "John Doe and Mary Doe”, who are in the process of adopting a baby boy, were named in a proceeding by one John Erickson, to halt the adoption on the grounds that petitioner John Erickson was the natural father of the infant and that his consent was required.
The infant was born on December 15, 1987 to Kelly Rosiak and her estranged husband John Rosiak, which latter person is not the biological father of the child. Shortly after the infant’s birth, Kelly Rosiak turned over the child to the proposed adoptive parents and consented before a Judge to an irrevocable termination of her parental rights.
The background of this case is extremely unusual. As noted, at the time the infant was born, Kelly Rosiak (biological mother) was legally married to one John Rosiak but the conception of the infant was the result of adulterous intercourse between John Erickson and herself, which situation is further complicated by the fact that Mr. Erickson at the times involved herein was also legally married and apparently estranged from his wife. Notwithstanding the fact that John Rosiak was not the biological father of the infant, he joined his wife, Kelly Rosiak, in consenting to the adoption by the proposed adoptive parents. His consent was of questionable value, since at a later stage of this proceeding, following a human leucocyte antigen (HLA) court-ordered test, John Erickson’s paternity was established beyond doubt. The findings of the HLA test, which was conducted on November 22, 1988, showed a probability of paternity of Mr. Erickson at 99.93%. Subsequent to this, this court made an order of filiation and Mr. Erickson now seeks to vacate and annul the ongoing adoption and obtain custody of the child since he contends his consent is required by the Domestic Relations Law.
Under the original section of the Domestic Relations Law dealing with adoptions of out-of-wedlock children, the issue of consent was contained in section 111 of that law. However, the United States Supreme Court in Caban v Mohammed (441 US 380 [1979]) declared that section of the Domestic Relations Law to be unconstitutional in that it authorized the adoption of children over the objections of a natural father who had maintained a substantial relationship with the children extending over a period of several years. Previously in Quilloin *559 v Walcott (434 US 246 [1978]), the Supreme Court held that a natural father who never had or sought legal custody of a child nor had supported the child was not deprived of due process by a State court decision to allow the husband of the natural mother to adopt the child since such adoption was in the child’s best interests.
In 1980, the New York State Legislature enacted a section designated as Domestic Relations Law § 111 (1) (e) which covered the application of the biological father’s consent to placement of an out-of-wedlock child for adoption. This legislation remains on the books and determines the outcome of this proceeding. It is first necessary to examine this legislation to see what was sought to be accomplished.
Domestic Relations Law § 111 (1) (e) states that the biological father’s consent to adoption shall be required as follows: "(e) Of the father, whether adult or infant, of a child born out-of-wedlock who is under the age of six months at the time he is placed for adoption, but only if: (i) such father openly lived with the child or the child’s mother for a continuous period of six months immediately preceding the placement of the child for adoption; and (ii) such father openly held himself out to be the father of such child during such period; and (iii) such father paid a fair and reasonable sum, in accordance with his means, for the medical, hospital and nursing expenses incurred in connection with the mother’s pregnancy or with the birth of the child.”
Clearly, if the petitioner father has complied with this section, his right to consent must be respected by this court. In the present situation, this court found during the hearings that the biological father repeatedly offered to pay the expenses attendant upon the infant’s birth and was frustrated from doing so. The court also finds that the biological father did not live with Kelly Rosiak for a period of six months immediately preceding the placement of the infant with the proposed adoptive parents, and in fact has never seen the child.
Shortly after the birth of the child, Kelly Rosiak, the biological mother, placed the child out for adoption, so that there was no opportunity for the petitioner father to live with her and the infant for the six-month period of time called for in the statute. There is no doubt that the petitioner made repeated attempts to contact Kelly Rosiak during this period and his attempts resulted in being warned to stay away from Mrs. Rosiak by her husband, with whom she had reconciled. *560 There is also no doubt but that her acts frustrated and thwarted the apparent good offices of petitioner who was effectively prevented from complying with Domestic Relations Law § 111 (1) (e).
We have before this court the question as to whether the failure to live with the mother for six months because the mother frustrated his efforts to do so and therefore prevented him from complying with the statute should be overlooked in view of the fact that the petitioner, as far as this court can determine, was probably sincere and honest in his attempt to develop some sort of family relationship in which the infant was involved. This is buttressed by the fact that petitioner John Erickson divorced his estranged wife and could have been free to form a family unit with Mrs. Rosiak had she been willing to cooperate.
As this court interprets the Domestic Relations Law section involved herein, the Legislature sought to encourage the formation of a family unit involving unmarried parents. This section requires compliance with all three parts of the section, and the mere attempt to comply with less than all parts is insufficient to meet the mandate of the law, notwithstanding the good-faith attempts on the part of the biological father. In Matter of Raquel Marie X. (150 AD2d 23) the Appellate Division held that Domestic Relations Law § 111 (1) (e) provides logical, objective and eminently sound indicia by which to determine whether an unmarried father has manifested the intent to establish a substantial familial relationship with an infant born out of wedlock, and where there is incomplete compliance with the section, consent of the biological father who does not meet these criteria is not required.
The biological father argues that the statute referred to herein by being strictly construed confers upon the mother the right and power to determine the child’s custodial future to the exclusion of the natural father. He argues that a strict construction of this section works a hardship upon his rights. The court, however, notes that it is equally important to preserve existing marriages and if the petitioner’s interpretation is to be given credit, it is equivalent to saying that the mother of the infant should not have reconciled herself with her existing husband in an effort to save the marriage. It is equally important that a marriage be protected and the Legislature certainly did not intend that Mrs. Rosiak must cooperate with the petitioner to meet the requirements of *561 Domestic Relations Law § 111 (1) (e) in lieu of a reconciliation affecting her marriage.
Further, in Matter of Raquel Marie X. (supra, at 27) the court stated that the legislative purpose of the statute was: "the consent of an unmarried father to an adoption will be required where a meaningful family relationship has been established.” Additionally noted, in Matter of "Female” D. (83 AD2d 933, 935 [2d Dept]) the court stated: "Where, however, the unmarried father does not meet these criteria, the adoption may go forward merely upon the consent of the mother. In our view, the foregoing statutory scheme effectively promotes the adoption of illegitimate newborns into stable adoptive families. The statute requires the consent of both parents where a de facto family unit has been created through the efforts of the natural father but, at the same time, precludes an absentee biological father from frustrating the attempts at adoption undertaken by the natural mother in the perceived best interests of the child where she is the only parent available to it.”
In Lehr v Robertson (463 US 248, 266-267), the Supreme Court of the United States, in finding that Domestic Relations Law § 111 (1) (e) is constitutional, stated the following: "As we have already explained, the existence or nonexistence of a substantial relationship between parent and child is a relevant criterion in evaluating both the rights of the parent and the best interests of the child.”
As can be seen by the above decisions of these higher courts (Appellate Division, Second Department, of the State of New York and Supreme Court of the United States), the important issue in defining the rights of an unmarried natural father relates to the familial relationship of such father with the mother and the infant. Irrespective of his attempts to create such relationship, this did not occur here. In view of that, this court must therefore conclude that the consent of the petitioner father to the adoption of the infant is not required.
At the trial, psychiatric testimony was adduced from Drs. Tuckman and Schwartzberg, both of whom testified that the infant involved herein had very clearly bonded with the proposed adoptive parents and that it would be a wrenching and emotional experience if the child’s custody were transferred to the petitioner whom he had never seen and did not know. They both felt that there would be irreparable damage if the existing arrangements presently in existence were inter *562 fered with and disrupted. The testimony showed that the proposed adoptive parents had a full and complete family life in which the infant was fully merged and that he was thriving under their nurturing care. Conversely, the testimony from petitioner showed that he had no family life and that he lived alone and would be required to place the child with a daughter on a day-care basis Monday through Friday. This would leave him to have the two days of the weekend to be with and raise the child. A comparison of these two situations shows that the best interests of the child would be served by the proposed adoption herein going forward to completion.
Accordingly, it is the decision of this court that the petitioner’s petition be dismissed and the adoption herein shall go forward as originally contemplated.