REQUESTED BY: Senator Don Wesely Senator John C. Lindsay Nebraska State Legislature
Is the relinquishment or consent provision of Neb. Rev. Stat. § 43-104.02 sufficient to prevent a situation such as the "Baby Jessica" case in Iowa?
Yes. The current statutes found at Neb. Rev. Stat. § 43-104 through 43-104.06 (1988) which impose a five day limitation for alleged fathers of children born out of wedlock to file a notice of intent to claim paternity should be sufficient, given the United States and Nebraska Supreme Court decisions, to avoid a problem such as the "Baby Jessica" case.
The case of In the Interest of B.G.C., 496 N.W.2d 239
(1992), otherwise known as the "Baby Jessica" case, involved an unusual set of facts. The mother of the child born out of wedlock named someone else as the father of her child. These two signed the proper release forms and placed the child up for adoption. (The mother instituted an action to rescind the release because it did not comply with a seventy-two hour waiting period. This case was remanded to the trial court to enter an order in favor of the mother.) After the release was signed, the mother informed the real biological father that he was in fact the father. He intervened in the adoption proceedings and successfully asserted paternity. The trial court found that the biological father's parental rights had not been properly terminated as per the statutory provisions. Therefore, the adoption was not valid, and the battle for jurisdiction between Michigan and Iowa began. It is due to this jurisdictional battle and retention of the child by the potential adoptive parents that created the emotional separation which the national media publicized so highly. Although such a scene tears at the heartstrings, the result was dictated by statute. However, it is the opinion of this office that the statute relied upon in Iowa is distinct from the consent provisions in Neb. Rev. Stat. § 43-104 through 43-104.06, and the situation encountered there can be avoided by applying related precedent set by the United States and Nebraska Supreme Courts.
It must be pointed out that the exact fact scenario of the "Baby Jessica" case has not been adjudicated by the United States or Nebraska Supreme Courts. Therefore, this opinion has limited precedential value.
United States Supreme Court Decisions
The rights of biological fathers in regard to children born out of wedlock are defined by the leading cases of Stanley v. Illinois, 405 U.S. 645 (1972); Quilloin v. Walcott, 434 U.S. 246 (1978); Caban v. Mohammed, 441 U.S. 380
(1979); and Lehr v. Robertson, 463 U.S. 248 (1983). This line of cases has put forth the accepted notion that parental rights and responsibilities are intertwined. Through these cases, the Court has almost entirely subordinated the interests of putative fathers to those of mothers and legally recognized fathers. "The mere existence of a biological link does not merit equivalent constitutional protection." Lehr at 267-268. The existence of a biological link only "offers the natural father an opportunity that no other male possesses to develop a relationship with his offspring." Id. at 262. Thus, the state need only provide adequate protection for a biological father to form a relationship with his child. In Lehr, this was accomplished with a statute that created a putative fathers registry in which potential fathers had to take affirmative action and responsibility by signing up with the putative father registry in order to receive notice of any adoption proceedings. This registry is similar to what is created by Neb. Rev. Stat. § 43-104.02 (1988) and should withstand a court challenge when a biological father has taken no steps to accept responsibility whether it is during the pregnancy or after the child is born. Also, the state has legitimate interest in the efficient adoption of newborn children and ensuring that putative fathers come forward quickly to take responsibility so that such proceedings are not disturbed after a child has been placed with adoptive parents. The state also has a legitimate interest in protecting the best interests of children born out of wedlock who have the opportunity to be adopted into a more traditional two parent home. The statutes found at Neb. Rev. Stat. §§ 43-104 through 43-104.06 accomplish these state interests and is consistent with the level of protection given to putative fathers by the United States Supreme court.
Nebraska Supreme Court Cases
The cases of Shoecraft v. Catholic Social Services,222 Neb. 574, 385 N.W.2d 448 (1986), and In re Application of S.R.S. and M.B.S., 225 Neb. 759, 408 N.W.2d 272 (1987), appear to contradict each other yet are fact specific and consistent with the United States Supreme Court decisions and legitimate state interests set forth above. In S.R.S. and M.B.S., the father had accepted responsibility and supported the mother during her pregnancy. The father also had lived with the mother and child for 19 months after the child was born. There was an established relationship, and the father immediately accepted responsibility. Whereas in Shoecraft, the biological father took no steps to accept responsibility or establish a relationship. The baby was placed for adoption immediately after birth, and he did not file with the Department of Social Services within the five day period required by Neb. Rev. Stat. § 43-104.02. Although there is language within Shoecraft that leaves open the possibility that a fact situation where the putative father who has no actual notice of the existence of his child can challenge Neb. Rev. Stat. § 43-104.02, it is the opinion of this office that the state's interest in efficient adoption proceedings, preserving adoption proceedings from later intrusion, and the best interests or well-being of children in the State of Nebraska outweigh the putative father's opportunity interest in establishing a relationship with his children beyond the five day requirement of Neb. Rev. Stat. § 43-104.02.
The United States Supreme Court has limited putative fathers' interests in their children to an opportunity interest in establishing a relationship. That opportunity interest requires the father to step forward to accept responsibility and establish a relationship as early as possible. Although neither the United States nor Nebraska Supreme Courts have addressed a case where the putative father has no actual notice of the existence of his children, this office is of the opinion that the state's compelling interest in efficient and undisturbed adoption proceedings and the best interests and well-being of the state's children are achieved by Neb. Rev. Stat. §§ 43-104 through 43-104.06, and such statutes will withstand a constitutional challenge in a case with facts similar to the "Baby Jessica" case.
Sincerely, DON STENBERG Attorney General Royce N. Harper Senior Assistant Attorney General 15-10-14.op cc: Patrick J. O'Donnell Clerk of the Legislature APPROVED: ______________________________ Attorney General