[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR VISITATION
Shearman Waters for plaintiff.
Zeldes, Needle Cooper for defendant.
The petitioners, Herbert Smith and Catherine Smith (hereinafter referred to as the "Smiths"), are the biological maternal grandparents of Michael S. Brett, a child born out of wedlock on December 16, 1990 to their daughter Kathryn Smith. The child's biological father is Michael Lennon, the natural brother of Alice Brett, the child's adoptive mother.
For the first seven months of this child's life, he lived with his biological parents. In August, 1991, the biological parents concluded that they were unable to provide a proper home for the child. They believed it was in Michael's best interest to have John Brett and Alice Brett (hereinafter referred to as the "Bretts"), the biological father's sister and brother-in-law, adopt him. The Smiths supported their daughter's decision to have the Bretts adopt Michael. John Brett conceded that at that time he told the Smiths they could continue to visit the child, which they have done from when he was born to August, 1991, approximately six times. The Smiths wanted what was best for Michael. They believed that having a grandparent-grandchild relationship with him would be in the child's best interest.
On November 17, 1991, the biological parents, Kathryn Smith and Michael Lennon, filed a consent under oath to having their parental rights to Michael terminated, which was approved by the Stratford Probate Court. The formal decree of this relative adoption was finalized by the Stratford Probate Court on January 23, CT Page 7564 1992, when Michael was about thirteen months old. The Bretts continued to allow the Smiths to visit Michael about ten times between August 1991 (when he went to live with the Bretts) to December, 1992, when the Bretts ended the visitation. The child was twenty months old at that time. The Smiths have not visited with the child during the past eighteen months.
On September 3, 1993, the Smiths filed a petition for visitation pursuant to § 46b-59 of the General Statutes, which provides in relevant part that "the superior court may grant the right of visitation . . . to any minor child to any person . . . and the court shall be guided by the best interest of the child. The grant of such visitation rights shall not prevent the court . . . from thereafter acting upon the custody of such child, the parental rights of such child or the adoption of such child . . . and any such court may include in its decree an order terminating such visitation rights."
It is undisputed that on November 17, 1991 the biological parents consented under oath before the Stratford Probate Court to having their parental rights terminated. By so doing, it freed Michael to be adopted by the Bretts and the formal decree of adoption was entered on January 23, 1991. By statutory definition, the termination of the biological parents' rights operated as a "complete severance by court order of the legal relationship between the child and his parents." Section 17a-93(e) of the General Statutes. The Bretts became Michael's parents when the adoption decree was entered on January 23, 1991, and they completely replaced the biological parents in the parent-child relationship.
Section 45a-731(5) of the General Statutes provides that the a final adoption decree terminates for all purposes the rights and duties between "adopted person and his genetic parents and therelatives of such genetic parent. . . ." (Emphasis added.) Michael became a legal stranger to his genetic parents and to the Smiths, his genetic grandparents, after the adoption. Any court ordered visitation to the Smiths would be violative of the adoption statutes and contrary to the public policy of this state. (See § 45a-731 of the General Statutes.)
The attorneys for both parties have filed excellent legal briefs and have cited Michaud v. Wawruck, 209 Conn. 407 (1988), in support of their respective positions. They both agree that court ordered visitation may be granted to any person under § 46b-59 if the court finds it to be in the child's best interest. CT Page 7565
The case of Michaud v. Wawruck, supra, is clearly distinguishable and does not apply to the facts in this case. In Michaud our Supreme Court found it was in the best interest of the child to approve an open adoption and visitation agreement between the foster parents and the adoptive parents. By agreement, the parties in that case stipulated that it was in the child's best interest for visitation to continue after the adoption. Here there is no written agreement that continued visitation would be in Michael's best interest. Mr. Brett's oral statement made to the Smiths prior to the adoption that they would be able to visit Michael was not binding on him after the adoption was finalized.
The Bretts both testified to needing time to explain to Michael who his biological relatives are. They believe it is their right to determine when it is in his best interest to tell him. As his parents, the Bretts have the sole right to decide with whom and when Michael should visit. The right of parents to raise their children as they see fit is a constitutionally protected right. Quilloin v. Walcott,434 U.S. 246, 255. The Smiths did not allege nor offer any facts to prove that Michael had been neglected or abused by his adoptive parents. To the contrary, the Bretts have been model parents in raising the child.
On September 30, 1993, this court ordered a visitation study to address this issue (Thim, J.). The study was completed on January 27, 1994 by Family Relations Counselor David O. Johnson whose report recommended that the Smiths' visitation be resumed to three Sundays a month of six hours each (plaintiff's exhibit D). Because the Smiths had not seen the child for the past eighteen months, he felt that visitation should be re-established as soon as possible. At the hearing, on cross-examination, he conceded that the Bretts as the adoptive parents had the right to decide with whom Michael should visit. He also admitted that the Smiths had no legal relationship with the child after the adoption. Neither in his report nor in his testimony did he state that court ordered visitation to the Smiths was in Michael's best interest.
The court finds the Bretts to be excellent parents, and they alone have the constitutional right to decide with whom the child should associate. For this court to order visitation in this case would be an intrusion of the Bretts' right to privacy to raise Michael as they see fit. Had the Bretts agreed to, court could have approved the agreement. Michaud, supra. In this case, the Bretts are strongly opposed to it, and there is no written visitation agreement. CT Page 7566
On May 6, 1994, this court ordered an evaluation by the Yale Child Study Clinic (Hauser, J.). The attorneys for both parties agreed to two questions to be addressed in the study (defendant's exhibit 2) as follows:
1. Is it in Michael's present best interest to have visitation with his biological maternal grandparents?
2. Is there harm to Michael in the absence of visitation by his biological maternal grandparents?
Dr. Joseph L. Woolston, a licensed child psychiatrist, prepared the report and confirmed at the hearing that court ordered visitation with the Smiths would not be in Michael's best interest at this time. His report answered the two questions as follows:
 Mr. and Mrs. Smith appear as caring, concerned biological grandparents who acted in Michael's best interest by supporting his adoption with Mr. and Mrs. Brett. Although they desire the best for Michael, they, appear to have difficulty appreciating the difficulty which forced visitation will cause Michael. Michael's present best interest is centered upon his consolidating his attachment to his parents and his sense of family with them. At this point in his development, court ordered visitation with Mr. and Mrs. Smith will pose a significant risk for Michael since it will tend to intrude on his relationship with his parents by placing him in a loyalty conflict between his parents and biological grandparents. For this reason court ordered visitation is not in Michael's present best interest. Although an ongoing relationship with Mr. and Mrs. Smith might provide possible benefit to Michael if Mr. and Mrs. Brett support it, forced visitation is likely to be harmful, whereas the absence of visitation by Mr. and Mrs. Smith is highly unlikely to cause present harm to Michael.
His recommendations were as follows:
 1. Mr. and Mrs. Brett should have full autonomy as Michael's parents in deciding with whom he visits.
 2. On a voluntary basis, Mr. and Mrs. Brett should consider consultation about the best fashion to inform Michael about his adoption, his family relationships and his developmental readiness for Michael's meeting his grandparents.
CT Page 7567
The court found Dr. Woolston's testimony to be credible, persuasive and probative. The opinion of experts can be afforded great weight. In re Theresa S., 196 Conn. 18, 27-28 (1985). The court finds no evidence that court ordered visitation is in Michael's best interest as required under § 46b-59 of the General Statutes. As his parents, the Bretts have a constitutional right to decide what is in Michael's best interest as to visitation or any other interests including matters affecting his health, education, religion or general welfare without interference from this court. For these reasons, the Smiths' petition for visitation is denied.
PETRONI, JUDGE