OPINION
Wade Esch is appealing a judgment of the Montgomery County Common Pleas Court Domestic Relations Division which granted custody of his minor child to her maternal grandmother, denying Mr. Esch's request for custody.
Melinda Esch, the plaintiff (hereinafter "Melinda"), and Wade Esch, Appellant, were married in 1990 and conceived a child, Lindsey Esch, who was born on November 6, 1992. The couple divorced on April 16, 1993. Mr. Esch contested paternity of Lindsey but was eventually proven to be her father. Therefore, it was not until February 19, 1994 that an agreed entry was filed finding Mr. Esch to be the father of Lindsey. The entry granted custody of the child to the mother, Melinda, and standard visitation to the father. During these two years when Mr. Esch was contesting paternity he alleges that he visited his daughter at Melinda's home and on occasion took her to the doctor. Melinda and her mother, Lucille Kempton, allege that Mr. Esch rarely visited Lindsey.
Then in 1994, Mr. Esch, who is an enlisted serviceman in the Air Force, was transferred to the state of Washington, further decreasing his contact with Lindsey. Mr. Esch and his new wife would come to Ohio for four weeks a year, staying with his new wife's family. At these times, Mr. Esch would visit with Lindsey for one or two nights at a time. Although Mr. Esch alleges that Melinda obstructed his visitation rights, he never sought to have the courts enforce these rights. Lindsey has only visited Mr. Esch in Washington on one occasion, in January of 2000, and her main contact with him has been through telephone calls. The limited time which Mr. Esch has spent with Lindsey has been primarily "fun time" where she experienced play activities and the lower court found little evidence was offered to demonstrate Mr. Esch's ability to care for Lindsey on a full time basis.
Since Lindsey was born she has stayed off and on with her maternal grandmother, Lucille Kempton (hereinafter "Lucille"), who also cares for Lindsey's half brother. At some point, Melinda began having problems with drugs and alcohol and became homeless. As a result, Lindsey was being forced to live with different friends of Melinda. Lucille learned of this situation and brought Lindsey to live with her in the early summer of 1999, where Lindsey continues to reside. Lucille does not work out of the home and offers day to day care of Lindsey and her older half brother.
On July 6, 1999, Lucille moved for an Ex Parte custody order because she feared for Lindsey's health and safety. On July 15, 1999, Lucille obtained an order of interim custody. On October 25, 1999, Mr. Esch filed a motion for reallocation of parental rights and responsibilities. A Guardian Ad Litem was appointed and she submitted a report on January 14, 2000, which recommended Lucille be given full custody of Lindsey with liberal visitation for her father and continuing visitation for Melinda. On January 28, 2000, a hearing on the motions was held before a magistrate, who filed a decision on February 10, 2000 granting full custody to Lucille. Mr. Esch filed objections to the magistrate's decision which were overruled on July 31, 2000. Mr. Esch filed this timely appeal.
Mr. Esch raises two assignments of error:
 1. IT IS REVERSIBLE ERROR FOR A TRIAL COURT TO FIND A PARENT UNSUITABLE AS CUSTODIAN FOR HIS MINOR CHILD WHERE THE BASIS FOR SUCH FINDING IS THAT THE CHILD IS BONDED WITH OTHER PARTIES AND WHERE SUCH PARENT LACKS DAY TO DAY CONTACT WITH THE CHILD.
 2. IT IS REVERSIBLE ERROR FOR A TRIAL COURT TO DEPRIVE A FIT PARENT OF THE CARE, CUSTODY AND CONTROL OF HIS MINOR CHILD IN FAVOR OF A NON PARENT RELATIVE BASED ONLY UPON THE BEST INTEREST TEST WITHOUT A SHOWING OF HARM OR POTENTIAL HARM TO THE CHILD.
Appellant's first assignment of error:
Mr. Esch argues that the trial court found that he was unsuitable as a custodian because Lindsey was bonded with her maternal grandparents as care givers. Lucille argues that the trial court found that no unsuitability finding was necessary under the statute and therefore, the court did not make a finding on Mr. Esch's suitability or fitness. The trial court's decision provides:
 This section does not require a finding that the parents are unfit, as would a custody proceeding under R.C. § 2151.23. See e.g. In the Matter of Elizabeth Wilson (April 30, 1999), Mont. App. No. 98-CA-19, unreported (court noted that a best-interest analysis was appropriate under 3109.04) (citing Boyer v. Boyer (1976), 46 Ohio St.2d 83). As a result, this court finds that pursuant to current Ohio law there is no unsuitability threshold; however, the remaining standards of R.C. § 3109.04 must be met prior to a change of custody and an award to Movant.
Esch v. Esch (July 31, 2000), Montgomery C.P. No. 1992 DR 02398, unreported. Therefore, the trial court did not make a finding on the suitability and fitness of Mr. Esch and his first assignment of error is moot.
Appellant's second assignment of error:
Mr. Esch argues that R.C. 3109.04(D)(2) is unconstitutionally broad in that it applies a best interests of the child standard rather than "unfitness" or "unsuitability" of the parents standard and thereby infringes on a parent's fundamental right to raise his child. We agree.
R.C. 3109.04(D)(2) provides:
 If the court finds, with respect to any child under eighteen years of age, that it is in the best interest of the child for neither parent to be designated the residential parent and legal custodian of the child, it may commit the child to a relative of the child.
When interpreting this statute, Ohio courts have held that it granted trial courts the authority to award custody to a relative when it found that it was in the child's best interests. Boyer v. Boyer (1976),46 Ohio St.2d 83; In re Wilson (Apr. 30, 1999), Miami App. No. 98-CA-19, unreported. The Ohio Supreme Court specifically stated that an award of custody could be made to a nonparent without a finding that the parents are unfit, if it was in the best interests of the child. Boyer, supra. Relying on this interpretation of the statute, several Ohio courts have granted custody to a nonparent relative without finding that the parents are unfit by finding that it is in the best interests of the child. Reynolds v. Goll (1996), 75 Ohio St.3d 121 (finding that it was in the best interests of an eleven year old child to remain with nonparents who had cared for her since she was a week old); Wright v. Wright (Oct. 19, 1995), Cuyahoga App. No. 67884, unreported (finding that a child's best interests are served by granting custody to the grandmother where the child has adjusted to life at his grandmother's house); Manering v. Manering (May 3, 1989), Jackson App. No. 559, unreported (finding that the best interests of the child are served by placing the child with his maternal grandmother, even though the father was suitable).
The Ohio Supreme Court has also established a standard for child custody disputes between a parent and non parent when not under R.C.3109.04(D)(2). In re Perales (1977), 52 Ohio St.2d 89. If R.C. 3109.04
is not applicable, in order to award custody to a nonparent rather than a parent, the court must find the parent unsuitable. Id.; see also Wilson, supra. Parental unsuitability may be found "if a preponderance of the evidence indicates abandonment, contractual relinquishment of custody, total inability to provide care or support, or that the parent is otherwise unsuitable, that an award of custody would be detrimental to the child." Perales, supra. When addressing the issue of unsuitability, the trial court should "measure it in terms of the harmful effect on the custody of the child, rather than in terms of society's judgment of the parent." Id. Yet, as established above, this standard does not apply in child custody disputes under R.C. 3109.04. Wilson, supra.
However, the United States Supreme Court recently issued an opinion which questions the constitutionality of R.C. 3109.04(D)(2) for authorizing the grant of custody to a nonparent based on a best interests standard rather than an unsuitability standard. Troxel v. Granville (2000), 120 S.Ct. 2054. In Troxel, the Supreme Court of the United States reviewed a judgment of the Washington Supreme Court finding that a Washington statute violated a fundamental right, the right of parents to rear their children. Id. The Washington statute permitted, "`any person' to petition a superior court for visitation rights `at any time'" and authorized the Washington courts to grant visitation rights whenever the court determined they were in the best interests of the child. Id.; see also, Washington Rev. Code 26.10.160(3).
The United States Supreme Court stated that the fundamental liberty interest involved, the interest of parents in the care, custody, and control of their children, was established more than seventy five years ago in Meyer v. Nebraska (1923), 262 U.S. 390 and has been continuously upheld by the United States Supreme Court. Troxel, supra; see also, Pierce v. Society of Sisters (1925), 268 U.S. 510; Prince v. Massachusetts (1944), 321 U.S. 158; Stanley v. Illinois (1972), 405 U.S. 645; Wisconsin v. Yoder (1972), 406 U.S. 205; Quilloin v. Walcott (1978), 434 U.S. 246; Santosky v. Kramer (1982), 455 U.S. 745. Thus, the United States Supreme Court stated that there can be no doubt "that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Troxel, supra.
The United States Supreme Court found that the statute's breadth infringed on the parent's fundamental right, specifically the statute's best interests standard did not give any weight to a fit parent's decision. Id. The statute did not require a finding of certain factors which would justify the government's interference with a parent's fundamental right to make decisions regarding the rearing of one's children, thereby violating the Due Process Clause. Id. Since a presumption exists that fit parents act in the best interests of their children, if a parent is fit, there should be no reason for the state to question the parents' ability to make the best decisions for their children. Id. Yet, by using the best interest standard without any consideration of the fitness of the parent, the trial court ignored the presumption and questioned the parents' decisions concerning the rearing of their children. Id. Thus, the statute failed to provide any protection for a parent's fundamental constitutional right to make decisions concerning the rearing of one's children. Id. (noting that several other states' statutes which provide for grandparent visitation protect the parents' rights by either incorporating a presumption that visitation is not in the child's best interests if the parents agree to no visitation or have a provision that visitation could only be awarded if it did not interfere with the parent-child relationship). The United States Supreme Court explained, "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing [sic] decisions simply because a state judge believes a `better' decision could be made." Id. However, the Troxel Court stopped short of stating that all visitation statutes must have as a condition precedent to ordering visitation a showing of harm or potential harm to the child. Id.
Mr. Esch argues that if it is unconstitutional for a state court to infringe on a parent's fundamental right to make child rearing decisions by ordering visitation to a nonparent, then likewise a state court granting custody to a nonparent unconstitutionally infringes on a parent's fundamental right to make child rearing decisions. We agree. In Troxel, the United States Supreme Court stressed that since a parent has a fundamental right to raise his child, the best interests of the child standard is insufficient to challenge a child rearing decision of a parent. The Troxel Court established that without some credence or presumption being given to the parent's decisions, the state infringes on the parent's fundamental right. R.C. 3109.04(D)(2), by only utilizing a best interest of the child standard, authorizes a state court to grant custody to a nonparent when the trial court simply disagrees with the parent as to whether the best interests of the child are served by the parent having custody instead of a nonparent relative. If, simply because it disagrees with the parents as to the child's best interests, a state court granting visitation to a nonparent is unconstitutional, then a state court granting custody to a nonparent based on the same disagreement must also be unconstitutional. Thus, R.C. 3109.04(D)(2) violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and cannot be used as a basis to grant custody to a nonparent. Since this is the standard that the trial court used to award custody of Lindsey to Lucille, the second assignment of error is sustained and the judgment must be reversed.
Since R.C. 3109.04(D)(2) is unconstitutional and cannot be utilized, the remaining standard in Ohio is that established in Perales. Under Perales in order for the trial court to award custody of Lindsey to Lucille rather than her father, Mr. Esch, or her mother, Ms. Esch, it must find her parents unsuitable. As mentioned above, the trial court made no such determination because R.C. 3109.04 (D)(2) did not require such a finding. To find her parents unsuitable and award custody to Lucille, the trial court must find by a preponderance of the evidence that each parent either committed abandonment, contractual relinquishment of custody, demonstrated a total inability to provide care or support for Lindsey, or that each parent is otherwise unsuitable, that an award of custody would be detrimental to Lindsey. This is the appropriate standard for the trial court on remand.
Judgment reversed and remanded for a determination of custody of Lindsey utilizing the unsuitability standard. Since Lucille has had custody of Lindsey for a significant period of time, this Court hereby orders that the custody of Lindsey shall remain with her until further order of the trial court. However, the trial court shall expeditiously provide a hearing wherein each of the parties are afforded full due process of law.
BROGAN, J. and GRADY, J., concur.