NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MONICA V., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, C.V., D.V., *Appellees.*

No. 1 CA-JV 17-0333
FILED 5-3-2018

---

Appeal from the Superior Court in Mohave County
No. S8015JD201600078
The Honorable Richard Weiss, Judge

**AFFIRMED**

---

COUNSEL

Law Offices of Christopher L. Scileppi, PLLC, Tucson
By Christopher L. Scileppi
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Kent E. Cattani joined. Judge Perkins also delivered a separate special concurrence.

---

**P E R K I N S**, Judge:

¶1　　　　Monica V. ("Mother") appeals the termination of her parental rights to her children, C.V. (born 2013) and D.V. (born 2014) (collectively the "Children"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2　　　　Mother and Thomas V. are the parents of C.V. and D.V. Thomas V. is deceased. Mother and Marcos C. were the primary caregivers for the Children when the Department of Child Safety ("DCS") took the Children into its custody.

¶3　　　　Shortly after moving in with Mother in 2016, Marcos began discipling the Children using a belt, sandal, or open hand, sometimes leaving marks and bruises on the Children. Mother, a registered nurse, was not concerned with Marcos's discipline techniques or the resulting injuries, and treated the Children's bruises with ice. On September 22, 2016, while Mother was disciplining D.V., then age 2, for unspecified misbehavior, Marcos intervened, hit D.V. multiple times, put her in "time out," and left her with a swollen arm.

¶4　　　　Mother dropped C.V. off at daycare the next morning before going to work at a local hospital. Mother left D.V., whose arm continued to swell that morning, in Marcos's care rather than taking her to daycare as usual. Later that day, Mother met Marcos and D.V. in the parking lot outside the hospital where she worked and examined D.V.'s injured arm. Despite seeing that D.V.'s arm was swollen and warm to the touch, Mother did not take D.V. into the hospital for treatment. That evening, Marcos told Mother that they needed to take D.V. to a hospital, and Mother agreed, but decided not to bring her to Mother's place of employment because of how it would appear to others. Instead, on the evening of September 24, two days after the injury, Mother and Marcos brought D.V. to La Paz Regional

Hospital, located approximately 100 miles from their home, in a different county.

**¶5** Physicians at La Paz Regional Hospital diagnosed D.V. with multiple fractures in her right arm and multiple bruises. D.V. was transferred by air ambulance to Phoenix Children's Hospital ("PCH"). Mother and Marcos told PCH physicians that D.V. slipped in the bathtub after Mother had left her and C.V. unattended to get their pajamas. However, Mother and Marcos previously told police and physicians at La Paz Regional Hospital that D.V. incurred the injuries during a fight with C.V. a month before or when she fell off a bed. PCH doctors diagnosed D.V. with adrenal hemorrhaging; blunt force abdominal trauma; a closed displaced humerus fracture; a displaced ulnar fracture; a displaced fracture of the radius; malnutrition; chest wall bruising; head and neck bruising; bruises on the thigh; and elevated liver enzymes (consistent with blunt force abdominal or liver trauma).

**¶6** PCH's Child Protection Team suspected D.V.'s injuries were the result of non-accidental trauma because of the multiple areas involved and the inconsistency between Mother's explanation of a fall in the bathtub and the locations of D.V.'s multiple bruises. Mother later told police other conflicting stories about when and how D.V. sustained her injuries. Mother ultimately pled guilty to child abuse by domestic violence, a Class 6 felony.

**¶7** DCS initiated a dependency and severance action, alleging Mother abused and neglected the Children, and recommending concurrent case plans of reunification or, alternatively, severance and adoption. DCS further recommended Mother participate in domestic violence counseling, individual or family counseling, parenting classes, parent aide services, and a psychological evaluation. Finally, DCS recommended at least six hours of supervised visitation between Mother and the Children per week. In October 2016, the juvenile court ordered Mother to participate in the services recommended by DCS and set the case plan to reunification with a concurrent plan of severance and adoption. Mother elected to engage in private counseling sessions and, by January 2017, DCS had received documentation evidencing Mother's participation in domestic violence counseling, individual counseling, and a psychological consultation. Mother did not undergo the recommended psychological evaluation.

**¶8** The juvenile court held a combined dependency and termination hearing on May 23 and May 24, 2017, at which Mother conceded the severance grounds of abuse and neglect but argued termination of the parental relationship was not in the Children's best

interests. The DCS caseworker testified and opined that because Mother's nurse's training had not prevented her from abusing her daughter, requiring Mother to complete additional services would not ensure a safe environment for the Children. Mother's therapist testified that Mother received counseling regarding self-esteem, grief, and domestic violence. But the caseworker testified that Mother's therapist had not requested any records related to the case or discussed Mother's case with DCS, and that Mother had failed to undergo a recommended psychological evaluation.

**¶9**        The juvenile court severed Mother's rights to the Children, finding severance was in the Children's best interests as it would benefit the Children "because [severance] would further the plan of adoption, which would provide the [C]hildren with permanency and stability." Mother now appeals, contesting the sufficiency of the best interests finding.

## DISCUSSION

**¶10**        On appeal from an order terminating a parental relationship, we will affirm unless the juvenile court's factual findings are clearly erroneous. *Audra T. v. Arizona Dep't Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998). Because the juvenile court is in the best position "to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we view the facts in the light most favorable to upholding the court's order. *Arizona Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). On appeal, Mother does not contest the juvenile court's findings related to abuse and neglect, but instead challenges the court's best interests finding and failure to order a social study pursuant to Arizona Revised Statutes ("A.R.S.") section 8-536 (2018).

## I.    Best Interests

**¶11**        Parental care and control of one's children is a fundamental right, but it is not absolute. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). When a statutory ground under A.R.S. § 8-533(B) is shown by clear and convincing evidence, the juvenile court may terminate a parent's rights upon finding, by a preponderance of the evidence, that severance is in the best interests of the child. *Id.* at 281–82, 288, ¶¶ 7, 41; A.R.S. 8-533(B).

**¶12**        At the initial stage of a severance proceeding, when the petitioner seeks to prove a statutory ground for severance, parents and their children "share a vital interest in preventing erroneous termination of their natural relationship." *Santosky v. Kramer*, 455 U.S. 745, 760 (1982). Once the statutory ground is proven by clear and convincing evidence, the analysis shifts to the child's best interests. *Kent K.*, 210 Ariz. at 285, ¶ 31. During the

best interests phase, the court has already determined that the parent is unfit, and it can therefore "presume that the interests of the parent and child diverge." *Id.* at 286, ¶ 35. Thus, the parent's interests in the parent-child relationship have been drastically reduced by the finding of a statutory ground for severance and are no longer the key consideration in an analysis of the child's best interests. *Id.*

¶13 "[I]n considering best interests, the court must balance the unfit parent's 'diluted' interest 'against the independent and often adverse interests of the child in a safe and stable home life.'" *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016). In this analysis, the court must find that severance would result in an affirmative benefit to the child or would eliminate a detriment caused by the continuation of the parental relationship. *Dominique M. v. Department of Child Safety*, 240 Ariz. 96, 98, ¶ 8 (App. 2016). While the severance ground inquiry focuses on the parent, the best interests inquiry primarily focuses on the child. *See Demetrius L.*, 239 Ariz. at 4, ¶ 15; *Kent K.*, 210 Ariz. at 287, ¶ 38.

¶14 In finding that severance was in the Children's best interests, the juvenile court here found termination of the parental relationship would "further the plan of adoption" and "provide the [C]hildren with permanency and stability." Mother argues that, under the totality of the circumstances, stability, security, and adoptability are insufficient to support a finding that severance is in the Children's best interests, and also argues that she is able to safely parent the children.

¶15 "It is well established in state-initiated cases that the child's prospective adoption is a benefit that can support a best-interests finding." *Demetrius L.*, 239 Ariz. at 4, ¶ 16. "A child may . . . reap benefits from adoption, warranting a best-interests finding primarily on that basis." *Id.* at 5, ¶ 16; *see also Lawrence R. v. Arizona Dep't of Econ. Sec.*, 217 Ariz. 585, 588, ¶ 11 (App. 2008) (explaining that a fact finder "*may* find that severance is in a child's best interests if the child is found to be adoptable," but is not required to do so); *Mary Lou C. v. Arizona Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004) ("The best interest requirement may be met if . . . the petitioner proves that . . . the child is adoptable."). In addition, "the juvenile court will be deemed to have made every finding necessary to support the judgment." *Matter of Appeal In Pima County Severance Action No. S-1607*, 147 Ariz. 237, 238 (1985). Thus, we will review the record to see if there is sufficient evidence to support the juvenile court's findings that severance is in the best interests of the child. *Id.* at 238–39.

**¶16** The record demonstrates that Mother pled guilty to felony child abuse, failed to protect the Children from abuse, and failed to provide emergency medical care to D.V. Reasonable evidence supports the juvenile court's finding that the Children would affirmatively benefit from severance.

**¶17** Citing *Roberto F. v. Arizona Dept. of Econ. Sec.*, 232 Ariz. 45, 53 n. 11, ¶ 38 (App. 2013), and *Alma S. v. Department of Child Safety*, 778 Ariz. Adv. Rep. 24, ¶ 36 (App. Nov. 14, 2017), Mother argues that to satisfy the best interests requirement, DCS must show there is a substantial likelihood the parent will not be capable of parenting effectively in the near future. The Court in *Roberto F.*, however, expressly declined to decide whether severance was in the child's best interests. 232 Ariz. at 54 n. 14, ¶ 41.

**¶18** To the extent Mother's argument properly interprets *Alma S.* (in which this Court vacated a severance), the record in this case is distinguishable from that in *Alma S.* and contains sufficient evidence to support a finding that severance is in the Children's best interests. In *Alma S.*, this Court noted that the parent had been the victim of abuse by the same person who had abused the child at issue, and that the mother had fully complied with the services DCS offered. The Court also found that the psychological reports submitted by DCS were flawed. Based on the circumstances of that case, this Court concluded that there was insufficient evidence to support the juvenile court's best interests finding. *Alma S.*, 778 Ariz. Adv. Rep. at ¶36. Here, unlike the parent in *Alma S.*, Mother was convicted of felony child abuse, and she did not fully comply with services: She refused to undergo the psychological evaluation that the juvenile court ordered and declined to allow release of her counseling records. In further contrast to the parent in *Alma S.*, there was no evidence that Mother was a victim of the adult who beat her child. Moreover, Mother was a practicing nurse and mandatory reporter of suspected abuse who deliberately delayed seeking treatment for her abused child for fear of disclosing the abuse to personnel in the hospital at which she worked. Thus, *Alma S.* is distinguishable.

**¶19** Finally, Mother asserts that the juvenile court's findings were insufficient, given her fundamental liberty interest in the care and control of her children. As discussed above, however, Mother's fundamental liberty interest is not absolute and is greatly reduced by the finding of a ground for severance. *See Kent K.*, 210 Ariz. at 286, ¶ 35. And here, the court's finding that the children would benefit from permanency and stability is sufficient to overcome Mother's diluted interests at this stage of

the severance proceedings. Accordingly, the juvenile court did not err in finding severance was in the best interests of the Children.

## II.     Failure to Order a Social Study

**¶20**        Mother also argues the juvenile court erred in failing to order a social study as required by A.R.S. § 8-536. Section 8-536 requires a social study "[o]n the filing of a petition." The juvenile court may waive the social study based on the child's best interests. A.R.S. § 8-536(C). Here, DCS originally filed a motion to terminate parental rights. The juvenile court later deemed the motion to be a petition but did not order a social study at that time. At the combined dependency and severance hearing, the court noted no study had been conducted but held the issue in abeyance until the close of evidence. Then, and before closing arguments, the juvenile court waived the study as not necessary in the best interests of the Children, noting any study would merely summarize the evidence already before the court. Mother has not shown how the court's waiver was inappropriate under § 8-536(C). Nor does she argue she was prejudiced by the omission of the study; she fails to cite any new evidence such a study might have provided the court. Thus, the juvenile court did not abuse its discretion in waiving the social study, consistent with the statute.

### CONCLUSION

**¶21**        For the foregoing reasons, we affirm the order terminating Mother's parental rights.

**P E R K I N S,** Judge, specially concurring:

**¶22**        While I agree with the panel's conclusion that this case is factually distinguishable from *Alma S.*, upon which Mother heavily relies, I write separately to clarify that I would not rely on *Alma S.* as authoritative even in the absence of factual distinctions. I have two concerns that preclude such reliance: first, the opinion improperly conflates the statutory ground analysis with the best interests analysis and, second, in doing so it relies on legal authority that is inapposite.

**¶23**        The panel in *Alma S.* held that, in the absence of a proven detriment that would be removed by severance, adoptability and stability gained through severance are insufficient to establish best interests. *Alma S. v. Department of Child Safety*, 778 Ariz. Adv. Rep. 24, ¶¶ 34, 38 (App. Nov. 14, 2017). In support of this holding, *Alma S.* relied on several United States

Supreme Court decisions to place severance in the context of fundamental rights. *Id.* at ¶ 13. While it is true that "some showing of unfitness" is required before terminating the parental relationship, the requisite lack of fitness is shown by the finding of a statutory ground for severance. *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) (discussing the due process concerns with severance based solely on best interests, over the objection of the parents and children, absent a finding the parents are unfit); *Kent K. v. Bobby M.*, 210 Ariz. 279, 285, ¶ 35 (2005) (discussing the consequence of finding a severance ground). Thus, contrary to the framework set forth in *Alma S.*, the material question at the best interests phase is not whether a parent has the ability to properly parent her child, but rather, whether the party seeking severance has shown, by a preponderance of the evidence, an affirmative benefit *or* the elimination of a detriment to the child by the termination of a parent's rights. *Dominique M. v. Department of Child Safety*, 240 Ariz. 96, 98, ¶ 8 (App. 2016); *see also Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016).

**¶24**        *Alma S.* states, "If a parent's ability to parent the child[] has been established . . . , there is a bond between the child[] and parent, and the parent has attained a safe and stable living situation, then the children's adoptability, household stability, and the ability of their current placements to meet their needs are subordinate to the fundamental rights of the parent in determining best interests[.]" *Alma S.*, 778 Ariz. Adv. Rep. at ¶ 38. I believe this portion of *Alma S.* is contrary to established law and I disagree with such a departure from precedent. *See, e.g.*, *Lawrence R. v. Arizona Dep't of Econ. Sec.*, 217 Ariz. 585, 588, ¶ 11 (App. 2008) (explaining that a fact finder "*may* find that severance is in a child's best interests if the child is found to be adoptable," but is not required to do so); *Mary Lou C. v. Arizona Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004) ("The best interest requirement may be met if . . . the petitioner proves that . . . the child is adoptable."). The rule set forth in *Alma S.*, first, reweighs the evidence, which is not the prerogative of this Court, and second, may act to subordinate the rights of the child (and potentially their best interests) to that of the parent at the point in time in which the interests of the parent and child have diverged.

**¶25**        Thus, I would decline to rely on *Alma S.* as authoritative given its divergence from a proper consideration of the child's best interests after a statutory ground for severance has been found. Of further concern is what I believe to be improper reliance on inapposite caselaw.

**¶26**        *Alma S.* relies on *Reno v. Flores*, which states, "So long as certain minimum requirements of child care are met, the interests of the child may be subordinated to the interests of other children, or indeed even to the interests of the parents or guardians themselves." *Alma S.*, 778 Ariz.

Adv. Rep. at ¶ 13; *Reno v. Flores*, 507 U.S. 292, 304 (1993). In *Reno*, the Supreme Court was discussing the release of undocumented minors detained by federal agents. *Id.* Moreover, the passage quoted by *Alma* begins: "Similarly, 'the best interests of the child' is *not* the legal standard that governs parents' or guardians' exercise of their custody: So long as certain minimum requirements of child care are met . . . ." *Id.* (emphasis added). Thus, the quote from *Reno* explicitly discusses parental rights in a wholly different context than the "best interests of the child" analysis at issue in Arizona's severance process.

**¶27**        Similarly, *Alma S.* incorrectly relied on a footnote in *Roberto F.* when it conducted its best interests analysis. *See Alma S.*, 778 Ariz. Adv. Rep. at ¶ 36; *Roberto F. v. Arizona Dept. of Econ. Sec.*, 232 Ariz. 45, 53 n. 11, ¶ 38 (2013) (citing *Jordan C. v. Arizona Dept. of Econ. Sec.*, 223 Ariz. 86, 97, ¶ 33 (App. 2009)). The *Roberto F.* language cited specifically concerned the time-in-care statutory severance ground, *see* A.R.S. § 8-533(B)(8)(C), not the best interests analysis. Such misplaced reliance leads to the conflation of two separate analyses—the statutory severance ground and child's best interests inquiry.

**¶28**        I can appreciate the concerns at the heart of the *Alma S.* opinion, but I cannot embrace the analysis that resulted. Thus, I concur with the decision in this case, but would not apply the *Alma S.* analysis even in the absence of material factual distinctions.



AMY M. WOOD • Clerk of the Court
FILED:  AA